## Reynolds v. Commonwealth.

(Decided June 6, 1933.)

J. M. ROBSION for appellant.

BAILEY P. WOOTTON, Attorney General, FRANCIS M. BURKE, Assistant Attorney General, and JOSEPH B. SNYDER, for appellee.

Opinion of the Court by Stanley, Commissioner—Affirming.

In the recent opinion delivered in the cases of W. B. Jones and William Hightower v. Commonwealth, 249 Ky. 502, — S. W. (2d) — (decided April 21, 1933), affirming judgments of convictions for the murder of James Daniels, a deputy sheriff of Harlan county, it is related that others were indicted with them. The appellant, Jim Reynolds, was one of those. He appeals from the conviction which sentenced him to life imprisonment.

A reference to that opinion is made for most of the

essential facts, which, however, may be briefly stated to be that members of the miners' labor union at Evarts, Harlan county, were dissatisfied with the conditions at the mines and treatment they had been receiving at the hands of the mine operators and of the officers of the law. There were several meetings held, particularly one on the night of May 4, 1931, in which highly inflammatory speeches were made by some of the leaders of the union advising and encouraging violence. The next morning a large group of miners and their sympathizers appeared from several directions and assembled at or in Evarts. Many, if not all, of these men were armed with high-powered rifles and shotguns. As Daniels and other officers in three automobiles approached, according to the commonwealth's evidence, they were fired upon by this group. According to the defendant's evidence the officers fired first. There was an extended fusillade, the period of the battle being estimated to have been from fifteen minutes to an hour. Daniels and two other officers were killed and others seriously injured.

Several witnesses testified that this defendant, Reynolds, had attended the meeting of the miners and especially the one held the night before, although no one testified that he said anything or was designated to do anything. Early the next morning he was seen at Verda and later at Evarts. He went back to Verda, where he lived, and returned to Evarts with a rifle. He was in company with several other armed men nearby and at the scene of the battle before it began, and witnesses testified positively that he fired some of the shots at the car in which the deceased, Daniels, was riding. The appellant denied that he belonged to the miners' union at the time, and testified that he had not been a member since 1924, when it appears the local union at Verda was dissolved. But this absence of membership is brought in question. The defense was that the appellant had not attended any of the closed meetings of the miners, and that on the night preceding the homicide he was in or around his home. The next morning he went to Evarts by a dirt road and not in the way the commonwealth's witnesses testified, and the firing had begun before he arrived at Evarts. During most of the time the shooting was going on he was at the home of James Simpson several hundred yards away from the

scene. Many witnesses corroborate the defendant in these matters, and a number of witnesses for the commonwealth were impeached by evidence of bad character and admissions of felony convictions. It was also developed that some of those witnesses may have been influenced in their testimony by favors of the mining company, and perhaps through a promise of immunity or leniency on the part of the prosecuting officers. The very contradictory nature of the evidence made the case peculiarly one for the jury, which chose to accept the evidence of one set of witnesses rather than the other.

The principal ground upon which a reversal of the judgment is sought is the admission of incompetent evidence. First, it is argued that testimony as to what was said and done at the meeting of the miners and by those who participated in the fight was inadmissible, because no conspiracy was proven to have existed between the defendant and those parties. The basis of this contention seems to be that, while the proof of the commonwealth was that the defendant was present at the meetings, no witness testified that he did or said anything whatsoever, and hence that his mere presence was not sufficient to prove his connection with or participation in any conspiracy. But that is not all the evidence. The defendant's active participation and consultation with some of those at that meeting the next morning when the purposes of the proven conspiracy were in part acomplished was abundantly shown. There was testimony to prove that the accused was present in the group which was firing on the officers, and that he was shooting at Daniels from behind or near a tree. The defendant's subsequent action was evidence of his approval and sanction of what took place at the meetings and of his willingness to join in the suggested plans and procedure. See Stacey v. Commonwealth, 189 Ky. 402, 225 S. W. 37, 25 A. L. R. 490. Aside from the inescapable conclusion that the arrangements were made at the meeting the night before for the assembling of these men at the time and place, it could hardly be said with any degree of reason that the coming together of several hundred men, heavily armed, at the same time and place, was accidental or coincidental. Crenshaw v. Commonwealth, 227 Ky. 233, 12 S. W. (2d) 336. All of this evidence was properly admitted under the familiar rule that statements of coconspirators of the accused on trial which are made in the formation or furtherance of

the conspiracy are competent. Skillian v. Commonwealth, 206 Ky. 586, 268 S. W. 299; Schleeter v. Commonwealth, 218 Ky. 72, 290 S. W. 1075. While some of the evidence of statements of others not made in his presence was introduced before it was manifested that he was a coconspirator, it all became competent when that relationship was later shown. Fletcher v. Commonwealth, 239 Ky. 506, 39 S. W. (2d) 972.

Objection was entered to certain testimony and overruled which, on the appeal, it is asserted was error. That consisted of acts and some immaterial statements of other parties during or immediately following the affray. Looking beyond the conclusion of their non-prejudicial effect, the evidence was competent as res gestæ, as was held in the Jones and Hightower opinion.

The evidence respecting the death and injuries of other officers accompanying the deceased, Daniels, was competent also as res gestæ. Those results were so intermingled with the killing of Daniels as to be inseparable. The case could not have been related without this evidence, and it was necessary and competent. Jordan v. Commonwealth, 240 Ky. 391, 42 S. W. (2d) 509; Gaines v. Commonwealth, 242 Ky. 237, 46 S. W. (2d) 75.

In the other case it was held proper to have admitted evidence of the aims and purposes of the union to be to secure better conditions for its members and to aid them when on strike. It was also competent to show grievances of the union against the mine operators and the law enforcement officers and those who were sympathetic with them. Included in this category is the evidence of the whipping of Charles Carpenter, at one of the miners' meetings, and the guarding of a bridge for the apparent purpose of intercepting strike breakers and their sympathizers. The visitation of a committee to the sheriff was of like character.

All of these things and others not necessary to relate in detail were links in the chain of circumstances tending to prove motive and concert of action inspired by that motive. As has been often said in cases of this kind, the evidence is permitted to take a wider range than when they are otherwise.

When John Maxwell, a witness for the commonwealth, was under cross-examination, he was asked if he did not give certain contradictory testimony before the

grand jury, and an objection was sustained, which the appellant asserts was error. The record discloses that the same questions, and others, were asked of the witnesses a little later, and that without objection of the commonwealth he answered that he had made the statements read and started to explain them when defendant's counsl interrupted with another question on an entirely different matter.

The court properly refused to permit Grace Thompson to testify what her husband had told her he was getting for testifying for the commonwealth, and had advised her that she should do the same thing. Section 606, Civil Code of Practice, the provisions of which are made applicable to criminal trials, was a bar to the admission of this evidence. Turnbull v. Commonwealth, 79 Ky. 495.

There was some other evidence objected to and admitted which, while immaterial, could have had no effect on the result. Such, for example, is the evidence of a number of men joining the union on Sunday following the killing of the officer; and that others than miners were permitted to join it. All of the claims of errors specified in brief in respect to the admission of evidence have received the careful consideration of the court. The arguments respecting their competency must be denied for reasons stated above and in the Jones and Hightower opinion.

The contention that the instructions were prejudicially erroneous cannot be sustained. The statement of our conclusion as to the evidence of a conspiracy obviously answers the argument that it was error to authorize the conviction upon the ground that the accused on trial had conspired with those who actually fired the shot or shots which caused Daniels' death. There was no evidence authorizing a self-defense instruction. The defendant claimed that he was not present and did not participate in the homicide. The evidence clearly showed the hostile purpose of the crowd in which the defendant is shown by the commonwealth to have been in, and the danger in which the officers were placed is stated in more detail in the Jones and Hightower opinion. A self-defense instruction is not proper under those circumstances, as was held in that case.

No accomplice instruction was given. The appel-

lant argues that, if he was guilty of conspiring to commit the crime charged because he had merely been present at the miners' meetings, then the witnesses who testified to his presence there were likewise guilty, and were, therefore, his accomplices. It was not shown that these witnesses were present or participated in the affray with the officers. There may have been one or two nearby, but it is not shown that they did anything. Whether they recanted or refused to go ahead (as did the witness, Jude King, who deliberately broke his truck, he says, to keep from having to use it in going after some guns), or there was a failure to prove their participation, of course we do not know. Most of the witnesses were not connected with the actual commission of the crime. In view of the overwhelming corroboration of those who testified to the defendant's presence. at the meeting, which indicated the defendant's guilt, the failure to give the accomplice instruction cannot be regarded as prejudicial, and this court is without power, as is expressed in several statutes, to reverse a judgment of conviction unless the substantial rights of the accused have been prejudiced. Fox v. Commonwealth, 248 Ky. 466, 58 S. W. (2d) 608.

This case was tried by an experienced circuit judge from another district and a jury summoned from a distant county, who were not affected by local conditions or influences arising from the unfortunate labor troubles in the region. The defendant received a fair trial and must bear the consequences of his act.

The judgment is affirmed.

Whole court sitting.