## Woods v. Commonwealth.

Jan. 28, 1941.

William Lewis & Son for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is by John Woods from a conviction of manslaughter and sentence to 21 years imprisonment for the killing of Robert Asher on August 6, 1939. The

grounds submitted as requiring a reversal of the judgment are absence of jurisdiction of the Clay circuit court; the admission of incompetent evidence, and error in giving an instruction on conspiracy and qualifying the self-defense instruction.

The indictment returned by the grand jury of Clay county was of John, Ted and Warren Woods. The defendants filed a petition for a change of venue and supported it with an affidavit to the effect that they could not obtain a fair trial in Clay county because there had recently been a great many homicides in the county, involving many people, and that the citizens who were not involved in those homicides were biased and "against killings." The commonwealth's attorney also asked for a change of venue on the ground that a state of lawlessness existed in the county. It was thereupon agreed that the venue of the case be changed to Jackson county. When it was called the Jackson circuit court sustained the defendant's motion to set aside the indictment because of error in the forming and summoning of the grand jury. Section 158, Criminal Code of Practice. On motion of the Commonwealth's attorney the case was then remanded to the Clay circuit court and the papers transferred thereto. When the case was called for trial there the Clay circuit court sustained a motion of the commonwealth's attorney to set aside the indictment upon the same grounds the defendants had already had it done in the Jackson circuit court, and referred the case to the grand jury. A new indictment was returned. When called for trial the defendants pleaded that the Clay circuit court had no jurisdiction of the case and moved that the second indictment be set aside. Their plea and motion were overruled, a severance was granted and the defendant John Woods placed on trial.

The appellant contends the Clay circuit court had been divested of jurisdiction by the transfer to Jackson county and that the new indictment must have been returned in that court. It is provided by Section 1117 of the Statutes that the court to which a case has been removed shall have the same jurisdiction to dispose of it as the court from which it came and that if the indictment be quashed a new one may be found "by a grand jury of the county to which the removal is made, and the same prosecuted until the case is finally disposed of,

as though the offense had been committed in that county."

Undoubtedly, as appellant submits, when a case has been removed the court from which it came has been divested of jurisdiction and another indictment found in that county against a defendant for the same offense is a nullity. Smith v. Commonwealth, 95 Ky. 322, 25 S. W. 106, 15 Ky. Law Rep. 637. That case had been remanded by the Perry circuit court to Clark county and while it was there pending a new indictment was returned by the grand jury of Perry county. We held that indictment void because the Perry circuit court had lost jurisdiction. The facts of the case at bar are materially different. After the indictment had been set aside by the Jackson circuit court, the commonwealth's attorney, as authorized by Section 1121 of the Statutes, moved that the case be remanded to Clay county and his motion was sustained. The appellant maintains that the action is void because the accused had no notice of the motion according to the terms of Section 1121 of the Statutes which provide that 10 days' notice in writing shall be given the defendant. The statute has the added provision, "unless notice be waived in open court by the defendant or defendants." The order of the Jackson circuit court recites, "This cause coming on for trial on today, the commonwealth announced 'ready for trial'; whereupon came the defendants by their counsel and produced and filed their motion to quash the indictment returned herein by the grand jury of Clay county." The order then sustains the motion and continues with the recitation that on motion of the commonwealth's attorney the prosecution is remanded to the Clay circuit court. It is apparent that the defendants were then present in court with their counsel and made no objection of record to the remand. They thereby waived notice of the motion and are to be deemed to have consented to the retransfer. It was after the remand and while the case was pending in the Clay circuit court— not in the Jackson circuit court—that the new indictment was returned. The court properly overruled the plea to the jurisdiction.

The appellant's brother, Ted Woods (called "Bear"), on that Sunday morning had been in a card game called "skin," at Ralph Walker's place with Robert Asher and others. They were drinking. Woods

quit the game saying that Asher had "got his last dollar off of me." Asher said, "Me too." A quarrel and fight followed, Woods pulled out a knife and Asher a pistol; but they were disarmed. As Woods left the place he said, "Boys, I will be back later." Within an hour Ted Woods and his two brothers, the appellant, John Woods, and Warren Woods were seen together going in the direction of Walker's place. John had a shotgun. When they arrived, or shortly thereafter, Asher was sitting in front of the place and Ted and Warren Woods came up and the former asked, "Robert, are you as game as you were awhile ago?" Asher responded, "Go away, I don't want any trouble with you." Thereupon they all drew their pistols. There is some evidence that Asher cursed Ted Woods and the latter said, "I don't allow anybody to treat me the way you have, Rob." At that time John was standing on the other side of the door. When the fight started, the several witnesses ran to cover. The commonwealth's evidence shows that Asher's pistol had not been fired. Ted Woods shot Asher twice with the pistol and John Woods twice with the shotgun. He was so close that the load of shot striking the man's watch carried the pieces through his body.

The version of the Woods brothers is that they had not gone to Walker's place together; that each had gone there for a different purpose or reason; that their meeting was a coincidence; that there was no conspiracy or agreement of any kind; that Asher precipitated the fight; drew his pistol on Ted; had fired at both John and Warren, and each of them shot in defense of himself. Ted related that when he drew his pistol Walker had grabbed and held him so that he could not get it out or fire it. The deceased was John Woods' wife's uncle and there had never been any trouble between him and these brothers.

Appellant argued there was no evidence authorizing the instruction on murder pursuant to a conspiracy or the qualification of the defense instruction upon that theory. As to the former, the appellant has no ground for complaint since the jury did not find him guilty of murder. As to the second, we think the evidence was sufficient. Armies fully caparisoned do not assemble without somebody having arranged it. Of course three brothers often meet at one place as a coincidence, but

the idea of coincidence weakens according to the circumstances. With one brother leaving a place vowing to return and avenge his wrong and doing so shortly thereafter with his two brothers, each armed with a deadly weapon, the jury was justified in believing that the assemblage was the sequence of an agreement rather than a mere fortuitous circumstance; that the meeting was causal rather than casual. Reynolds v. Commonwealth, 249 Ky. 644, 61 S. W. (2d) 288.

Upon the theory of proof of a conspiracy rests the competency of evidence of the previous fight and the threat made by Ted Woods. The appellant, John, was not present. The question arises whether statements and acts of one made during a previous affray out of which the conspiracy grew are competent against another who was not present but who later entered into a conspiracy to avenge the wrong claimed to have been committed against the former in the first affray.

It is a familiar rule that when the existence of a conspiracy has been established anything said or done by a member thereof in the formation, execution or furtherance of the object or purpose may be proved against all, and it is immaterial whether or not the declarations were made in the presence of the party against whom the evidence is offered. Stacey v. Commonwealth, 189 Ky. 402, 225 S. W. 37, 25 A. L. R. 490. Ordinarily, declarations made by one of the conspirators before its formation or after the accomplishment of its object are not admissible against another not present unless they are so closely connected with the accomplishment of the object as to form part of the res gestae. The rule of admission, like that relating to evidence of other offenses committed by a lone defendant, must be and is extended to declarations of a co-conspirator, alleged or proven, for the purpose of illustrating the motive, purpose and intent of the associates in crime. "Conspiracy" Section 41, 11 Am. Jurisprudence; Smith v. State, 46 Tex Cr. R. 267, 81 S. W. 936, 108 Am. St. R. 991; McIntosh v. Commonwealth, 272 Ky. 159, 113 S. W. (2d) 1144. We are of opinion the previous difficulty and statements of Ted Woods were relevant and competent for that purpose. The rule was applied in Burton v. Commonwealth, 151 Ky. 587, 152 S. W. 545; Tyree v. Commonwealth, 160 Ky. 706, 170 S. W. 33.

Teaberry Walker, called as a witness for the de-

fendant, told of the whereabouts of Ted Woods and of his return to the Walker place to establish that he had not gone there with either of his brothers, John or Warren. He was asked on cross-examination if he had seen either of them before the shooting and he answered "No." Thereupon the witness was asked and denied that at a certain time and place he had said to Henry Hollin, "That you met Ted, John and Warren as they went back that way and they said they were going back there to kill Robert Asher." He was also asked and denied having said to Jim Myers, "I met the Woods boys as I was going home to dinner and asked them where they were going and they said they were going up there to kill Robert Asher." Hollin and Myers testified that Walker had made those statements. The court admonished the jury that the testimony should not be considered on the issue of the guilt or innocence of the defendant but for whatever bearing it might have on Walker as a witness. The defendant objected to the evidence and excepted to the admonitions. The admonitions are incomplete, for it was the credibility of Walker as a witness that was involved, but the difference is technical and we are sure the jury understood what was intended. The greater error appellant contends was that the evidence violated the rule which forbids a party from proving what a witness called by him said out of court in order to establish the fact by the declaration; in other words, where a witness does not testify as it is believed he will by the parties who call him they cannot go outside to prove such fact by showing the witness had so related it. Roberson's Kentucky Criminal Law, Section 1863. It does not seem to us that this examination can be regarded in that class or to offend the rule. The witness had in effect testified the men were not together, and then on cross-examination specifically denied he had seen John Woods in association with his brother. The cross-examination laid the grounds and then sought to impeach his testimony by showing that he had made statements to the contrary. Civil Code of Practice, Section 598. Roberson's Kentucky Criminal Law, Section 1858.

Judgment affirmed.