## LAYNE v. COMMONWEALTH.

Court of Appeals of Kentucky.

Jan. 30, 1953.

Francis M. Burke, Pikeville, for appellant.

J. D. Buckman, Jr., Atty. Gen., and Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MOREMEN, Justice.

Appellant, Jessie Layne, was indicted for the willful murder of Dave Coleman and convicted of manslaughter. He was given a sentence of 15 years in the penitentiary.

Appellant urges as grounds for reversal: (1) appellant was entitled to a directed verdict; (2) the instructions were erroneous; (3) incompetent evidence was introduced, and (4) argument of special counsel was improper.

On the night of August 3, 1951, Dave Coleman and John Maynard, deputy sheriffs of Pike County, and Hubert Stevens, deputy marshal of the city of Phelps, were in attendance at the police court of that city, when Cynthia Eldridge, a neighbor of appellant, approached John Maynard and asked if he had seen her little boy, "Benny Joey." Maynard fetched the boy from the courtroom and Mrs. Eldridge said to her son: "Come on right quick, Jessie Layne is up here drunk as a dog." Thereupon, Maynard summoned his fellow peace officers, Coleman and Stevens, and the triad set out to find Layne. A short distance from the courtroom they found appellant standing in the street near his home. He was armed with a shotgun.

The description of the encounter which immediately began will not emerge from an integration of all the evidence adduced because the witnesses differ sharply about this occurrence. One version or the other may be accepted, but not both.

Witnesses produced by the Commonwealth state that when the officers found appellant, Stevens was on the left side of Coleman who was holding a pistol in his right hand and a flashlight in the other. Maynard was about six feet to the rear of Coleman. Stevens told Layne, "You are under arrest. Give me your gun." Layne said, "Back up you god damn son of a bitch. I said back up." When he made that statement he was pointing his gun at Stevens. Dave Coleman turned the beam of the flashlight on appellant, while Stevens "kept inching up to grab him." Appellant turned his shotgun on Coleman and fired. Coleman turned, fell, and his pistol fired into the ground.

Appellant, and he was corroborated to some extent by other witnesses, testified that he was standing in front of his house when he saw the light being held by one of the men and that, "When they throwed the flash light they said 'drop your gun' and I said 'move the light so I can see who you are' and one said to the other 'shoot him.' I said 'Boys, you don't have to do that. I will drop the gun if you will drop the light' and he said 'shoot him' again and the fellow that had the flash light come up with his gun." He had not recognized the men at the time he fired. He said, "Just as my gun cracked there was one pistol cracked and two or three seconds later another one cracked." He denied that the men had attempted to arrest him or had told him he was under arrest.

It was a case for the jury, and the court properly overruled appellant's motion for a directed verdict of acquittal.

Appellant's criticism of the instructions arises principally from the complaint that none of the officers had properly qualified as peace officers. It was stipulated that the deceased, Dave Coleman, had been convicted of voluntary manslaughter. It was further stipulated that Maynard, Stevens, and Coleman had not filed their photographs with the county clerk or the affidavit required by KRS 61.300 and, be-

cause of this failure, it is argued that these men were not peace officers, either de jure or de facto. Reliance is had upon Creighton v. Commonwealth, 83 Ky. 142, 7 Ky. Law Rep. 70, 4 Am.St.Rep. 143, in which it was held that one who is not a peace officer, either de jure or de facto, does not, by assuming to exercise the duties of such an officer, acquire any more authority to make an arrest than any other private individual. But that case is readily distinguishable in fact from this case because there, one Wilson had been elected marshal of the town, but had failed to qualify, or even to attempt to qualify, in the manner provided by law. He had not received his certificate of election and had made no pretense of conforming to any of the requirements for qualification. But it was carefully pointed out in that case that: "If the deceased had executed his bond and entered upon the discharge of his duties as marshal without taking the oath, being otherwise eligible, this would have made him an officer de jure, or certainly his qualifications could not be questioned until some proceeding had been instituted and his office declared vacant. A mere irregularity in the qualification of an officer, or in the attempt to qualify, where he has entered upon the discharge of his duties, can not be inquired into in a collateral proceeding, for the purpose of invalidating his right or title to the office; but in this case the party acting as an officer never qualified or attempted to qualify, and was ineligible for the position when the arrest was made."

While there is grave doubt as to whether Coleman could ever have properly qualified under the law, there is no doubt that the other two officers were at least officers de facto and, therefore, had the right to make the arrest. Smiddy v. Commonwealth, Ky., 247 S.W.2d 215, and Willis v. Skinner, 211 Ky. 340, 277 S.W. 490.

It is insisted that "to the extent the court assumed, and told the jury, that Coleman had the right to arrest Layne and if Layne resisted with the knowledge that Coleman was an officer, he was guilty of murder, and guilty of voluntary manslaughter if he did not know he was an officer, the court committed prejudicial error."

■ Instruction No. 1 contained the murder charge. It was to the effect that if Coleman was attempting to arrest Layne for being drunk on a public highway, and appellant, knowing that Coleman was a peace officer, shot him for the purpose of preventing arrest, the jury should find him guilty of murder. Appellant was not found guilty of murder under this instruction. Therefore, he has no right to complain of any error which might exist in it. Woods v. Commonwealth, 285 Ky. 275, 147 S.W. 2d 690, and Stanley's Instructions to Juries, Section 799.

■ The second instruction reads as follows:

"If the jury believe from the evidence in this case that the deceased and his companions approached the defendant in the dark and did not announce to the defendant that they were placing him under arrest and that the defendant willfully, knowingly and in sudden heat and passion or in sudden affray caused thereby, shot and killed Dave Coleman, the deceased, with a shotgun, then you will find the defendant guilty of voluntary manslaughter, an offense included in the indictment herein, and fix his punishment at confinement in the state reformatory for a period of not less than two years nor more than twenty-one years, in your discretion."

The foregoing instruction submits to the jury the question of the verity of appellant's version of the encounter because the question of whether or not the men were peace officers is not involved. It states that if the jury believed they approached appellant in the dark and did not announce that they were placing him under arrest and the defendant in sudden passion killed Coleman, he was guilty of manslaughter. It is the same instruction that would be given in cases where the men were private individuals and, therefore, we believe properly submitted appellant's account of the incident to the jury.

■ It is also argued that Instruction No. 5 is erroneous because it did not affirmatively tell the jury that appellant had the right to resist arrest and to use as much force as appeared to him to be necessary to repel the assault. This instruction reads as follows:

"Although you may believe from the evidence beyond a reasonable doubt that the defendant was drunk or intoxicated on a public way at the time of the killing in the presence of the deceased, Dave Coleman, in Pike County and that the defendant shot and killed deceased while the deceased was endeavoring to arrest the defendant for that offense, yet if you further believe from the evidence that the defendant did not threaten deceased and his companions by pointing a shotgun at them or either of them and that deceased presented and pointed a pistol at defendant, from which defendant believed and had reasonable ground to believe that he was then and there in immediate danger of death or some great bodily harm at the hands of deceased and that it was necessary, or was believed by the defendant in the exercise of reasonable judgment to be necessary, to shoot and kill the deceased in order to avert that danger, real or to the defendant apparent, then you will acquit the defendant on the ground of self defense or apparent necessity."

This instruction is probably more favorable to appellant than the facts require. It may be noticed that it gives the jury the right to acquit appellant even though appellant was drunk on a public way and the men were attempting to arrest him. In other words, they could believe that the officers were attempting to fulfill the duties imposed upon them by law and, yet, if they further believed that the appellant did not point a gun at them and the deceased did point a pistol at appellant, appellant had the right to shoot in self-defense if he be-

lieved he was in danger of great bodily harm or death at the time.

We believe this was a very liberal instruction and appellant has no reasonable cause to complain about it.

■■ Appellant's third ground for complaint is that incompetent evidence was introduced. Objection is made that the conversation between Cynthia Eldridge, her son Benny Joey, and John Maynard, referred to above, was incompetent, although no reason is stated to support the belief that it was incompetent. We do not find the evidence objectionable because it clearly demonstrates the evidence the officers had which started them upon the search for appellant. Appellant also objects because John Maynard was permitted to testify that while he was bringing appellant to jail, he grabbed at his gun, cursed him, and threatened to kill him. We believe this evidence was competent to show appellant's state of mind immediately following the commission of the crime.

■ Finally appellant complains of improper argument and the admonition given by the court. The statement made by counsel in the closing argument was, "A defendant who kills an officer is guilty of anarchy." This perhaps is not an accurate statement but we do not believe it to be prejudicial. The court, upon objection, admonished the jury as follows:

"The parties are entitled, gentlemen of the jury, to use the facts in evidence and every reasonable deduction from those facts. It is impossible to hold counsel to a strict line in presenting a case, however, the jury is the judge of the facts and the statements of counsel, not based on the facts, the jury can, in their discretion, disregard. The objection will be overruled, to which the defendant excepted."

We have found no prejudicial error in the record. The judgment is therefore affirmed.