G.G.L., Appellant,

v.

CABINET FOR HUMAN RESOURCES, COMMONWEALTH of KENTUCKY; and D.L., an infant under 18 years, Appellees.

E.H., Appellant,

v.

CABINET FOR HUMAN RESOURCES, COMMONWEALTH of KENTUCKY; and D.L., an infant under 18 years of age, Appellees.

CABINET FOR HUMAN RESOURCES, COMMONWEALTH of KENTUCKY, Cross-Appellant,

v.

E.H.; G.G.L.; and D.L., an infant, Cross-Appellees.

Court of Appeals of Kentucky.

Jan. 4, 1985.

Discretionary Review Denied and Case Ordered Published by Supreme Court April 4, 1985.

Debra Ann Doss, Ernest H. Jones, II, Lexington, for appellants/cross-appellees.

Lucy B. Richardson, Cabinet for Human Resources, Frankfort, for appellee/cross-appellant.

Patricia A. Mertens, Lexington, guardian ad litem.

Before COOPER, McDONALD and WIL-HOIT, JJ.

McDONALD, Judge:

This is the consolidated appeal of G.G.L. and E.H. whose parental rights in and to the infant appellee, D.L., were involuntarily terminated after a hearing before the Fayette Circuit Court.

The infant, D.L., was discovered by a child abuse investigator with the Lexington Police Department with her natural parents, the appellants, at a "hobo camp" on September 8, 1981. She was then approximately four months old. At the time D.L. was found, E.H., her father, was intoxicated and G.G.L., her mother, had two blackened eyes and a swollen face from having gotten in the middle of a fight earlier in the day between E.H. and another man. D.L. was taken into custody and placed in foster care by the appellee, Cabinet for Human Resources (C.H.R.). Although C.H.R. worked with the appellants for nearly a year in an attempt to help them obtain adequate housing for themselves and the child, the appellants were never able to find employment nor a place to live for any appreciable length of time. They visited D.L. on a few occasions, but missed several scheduled appointments to see her. They made no requests to see D.L. after August, 1982.

E.H. and G.G.L. eventually moved to Dayton, Ohio, where they had relatives and could qualify for welfare benefits. At the time of the hearing, they were receiving benefits of $98 per month and food stamps. Neither had found employment; and although they had secured an apartment, they had no refrigerator.

On October 5, 1982, C.H.R. filed a petition seeking the involuntary termination of the appellants' parental rights. It had previously obtained the voluntary termination of the parental rights to D.L. from L.L., her legal father and the estranged husband of G.G.L. When the trial commenced on June 13, 1983, neither parent was present although, pursuant to the court's order, C.H.R. had provided both with roundtrip bus tickets to Lexington from Dayton. When the trial resumed on July 25, both appellants appeared and testified. On September 14, 1983, the trial court entered its findings of facts, conclusion of law and judgment terminating the parental rights of both E.H. and G.G.L.

The appellants argue that the evidence presented by C.H.R. in proof of its allegations was not of the clear and convincing quality required by the U.S. Supreme Court in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). They assert that the proof merely shows them to be poverty-stricken and, relying on *Department for Human Resources v. Moore,* Ky. App., 552 S.W.2d 672 (1982), argue that their parental rights should not have been terminated solely for that reason.

The trial court was aware of the standard of proof mandated by the *Santosky* case and clearly articulated in its judgment that it was utilizing this appropriate standard. The trial court's detailed and exhaustive findings of fact fairly and accurately reflect the testimony of record and are of great assistance to this court.

We further find no error in the court's conclusions that the conduct of the appellants constituted abandonment and neglect of D.L. as contemplated by K.R.S. 199.011(6) wherein an abused or neglected child is defined as follows:

"Abused or neglected child" means a child whose health or welfare is harmed or threatened with harm when his parent ... inflicts or allows to be inflicted upon the child, physical or mental injury to the child by other than accidental means; creates or allows to be created a risk of physical or mental injury to the child by other than accidental means ... willfully abandons or exploits such child; does not provide the child with adequate care and supervision; food, clothing and shelter; education; or medical care necessary for the child's well being ....

K.R.S. 199.603(1) provides that a circuit court may terminate one's parental rights if it is proven that it is in the child's best interest and if "(a) the child has been abandoned; or (b) the child has been substantially or continuously or repeatedly neglected or abused."

■ We agree with the trial court that the evidence clearly and convincingly established that neither E.H. nor G.G.L. ever demonstrated any ability or motivation to provide for their own basic needs, let alone those of their child, D.L. All the food and

clothing D.L. was provided during the first four months with the appellants came from charitable organizations. Moreover, the trial court's determination was not solely based on the appellants' lack of financial resources and thus their reliance on *Moore, supra,* is misplaced. The appellee, as the trial court detailed in its findings, showed that both appellants had serious and long-standing physical and emotional problems related to alcohol abuse, that they frequently engaged in violent behavior, that they lacked employment skills or the motivation to obtain such skills, that they had not provided the child with proper medical attention, and that they lacked basic parenting skills. Thus, the judgment terminating the appellants' parental rights is affirmed.

In its cross-appeal, C.H.R. alleges the trial court erred in ordering it to pay $105 for the appellants' bus transportation from Dayton, Ohio, to Lexington to enable them to attend the hearing and in allowing the appellants to proceed in forma pauperis before this court on appeal. They argue that K.R.S. 453.010 specifically prohibits a trial court from assessing costs against the Commonwealth unless there is a statutory provision which so allows. K.R.S. 199.-603(8) provides in an action for involuntary termination of parental rights that the court may appoint an attorney for an indigent defendant and that the fee therefor, not to exceed $300, may be taxed as costs. That the statute does not provide for any other costs to be assessed, C.H.R. argues, leaves the court without authority to assess such costs as transportation against it. *See also, Department for Human Resources v. Paulson,* Ky.App., 622 S.W.2d 508 (1981).

The basis for its allegation that the trial court erred in allowing E.H. and G.G.L. to proceed in forma pauperis on appeal is found in K.R.S. 453.190 which provides authority for a court to grant such a request to a "poor person *residing* in this state ...." (Emphasis our own.) At the time this action was commenced, decided and appealed, the appellants were no longer residents of Kentucky.

Despite the authority cited by the cross-appellant, we agree with the appellants that the application of K.R.S. 453.010 and K.R.S. 453.190 in the manner sought by C.H.R. would effectively deny them their constitutional right to fundamental fairness as guaranteed by the Fourteenth Amendment of the U.S. Constitution. *See Santosky v. Kramer, supra* 455 U.S. at 753–54, 102 S.Ct. at 1394–95, wherein the Supreme Court held as follows:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting State intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with *fundamentally fair procedures.* [Emphasis our own.]

We believe the recent case of *Smothers v. Lewis,* Ky., 672 S.W.2d 62 (1984), provides additional support for our position that the trial court did not err in this regard. Therein our highest court held as follows:

> In addition to the Court's Constitutional rule making power, the Court is also vested with certain "inherent" powers to do that which is *reasonably necessary for the administration of justice within the scope of their jurisdiction....* The control over this inherent judicial power ... is exclusively within the constitutional realm of the courts. As such, it is not within the purview of the legislature to grant or deny the power nor is it within the purview of the legislature to shape or fashion circumstances under which this inherently judicial power may or may not

be granted or denied. [Emphasis our own.] [*Id.* at 64.]

■ Clearly, we believe the trial court had the inherent power to assess, as costs, the amount needed to provide the appellants with transportation to the hearing, the outcome of which would determine their right to ever again see or communicate with their child. Although costs are usually awarded to a successful party in a lawsuit, it is well settled that a trial court is imbued with the discretion to assess costs as it deems appropriate. *Johnson v. Johnson*, Ky., 273 S.W.2d 558 (1954); *McClure v. Young*, Ky., 396 S.W.2d 48 (1965).

■ Finally, we believe any statutory provision requiring an indigent party to be a resident in order to be allowed to proceed in forma pauperis on appeal from an action initiated by the Commonwealth involving their fundamental liberty interest in their child is an infringement on both the Equal Protection Clause of the Fourteenth Amendment as well as § 115 of the Kentucky Constitution. *See Santosky v. Kramer, supra.* As the case of *Thompson v. Ward*, Ky., 409 S.W.2d 807 (1966), relied upon by C.H.R., was decided before our State Constitution was amended in 1975 to provide for at least one appeal as a matter of right in all cases, we no longer believe it to be authority for the constitutional soundness of that portion of K.R.S. 453.190 which indicates that only residents may make application to proceed, as appellants, without paying court costs.

The judgment of the Fayette Circuit Court is affirmed.

All concur.