COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, Appellant,

v.

G.W.F., A Child; E.S. (The Mother); and W.F. (The Father), Appellees.

No. 2006–CA–002473–ME.

Court of Appeals of Kentucky.

June 8, 2007.

Ordered Published July 20, 2007.

Kirk Patton Woosley, Paris, KY, for appellant.

No Brief filed for appellees.

Before ABRAMSON and DIXON, Judges; ROSENBLUM,[1] Senior Judge.

*OPINION*

ROSENBLUM, Senior Judge.

The Cabinet for Health and Family Services appeals from part of an order of the Carter Circuit Court, which directed the Cabinet to pay for opiate hair follicle drug screen testing to be performed on the parents of a child adjudged to be neglected. The Cabinet argues that the order violates the doctrine of the separation of powers. We agree and vacate that portion of the

---

1. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

order directing the Cabinet to assume the costs associated with the drug screening.

E.S. and W.F. are the parents of G.W.F., a minor child. On February 24, 2006, the Cabinet filed an emergency neglect petition, alleging as grounds for removing the child a history of serious drug abuse by E.S. and W.F. G.W.F. was placed in the temporary custody of his grandparents. He was later adjudged to be a "neglected" child pursuant to Kentucky Revised Statutes (KRS) 600.020(1) and ordered to remain in his grandparents' custody. The Cabinet made efforts to reunify the family by enrolling the parents in substance abuse counseling and monitored their progress by means of drug testing. A review hearing on the case was held on November 1, 2006, at which neither parent was present. At the request of the Cabinet, the circuit court ordered E.S. and W.F. to undergo hair follicle drug screen testing. The order also directed the Cabinet to pay the costs associated with the testing. This appeal followed.

The Cabinet contends that, under the separation of powers doctrine, it is within the sole purview of the Kentucky legislature to determine how governmental resources are expended, and that consequently the trial court exceeded the scope of its authority by ordering the Cabinet to pay for the drug tests without any specific statutory authorization.

We set forth below the portions of the Constitution of Kentucky and other pertinent statutory provisions which define the doctrine of the separation of powers:

Kentucky Constitution § 27 states:

The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Kentucky Constitution § 28 states:

No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Kentucky Constitution § 230 states in part that:

No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law[.]

KRS 41.110 provides in part that:

No public money shall be withdrawn from the Treasury for any purpose other than that for which its withdrawal is proposed, nor unless it has been appropriated by the General Assembly or is a part of a revolving fund, and has been allotted as provided in KRS 48.010 to 48.800, and then only on the warrant of the Finance and Administration Cabinet.

KRS 41.130(2) provides that:

No warrant shall be issued unless the money to pay it has been appropriated by law. The Finance and Administration Cabinet may require any claimant to state on the face of his claim the law under which it is payable.

KRS 453.010 provides that:

No judgment for costs shall be rendered against the Commonwealth in any action prosecuted by or against the Commonwealth in its own right, unless specifically provided by statute; provided, however, that in any civil action filed in any court of competent jurisdiction by or against the Commonwealth of Kentucky, the costs may be paid by the Commonwealth when such costs are approved and allowed by the judge of the court in which the case was filed. Costs shall

not exceed the fees allowed for similar services in other civil actions.

And finally, Kentucky Rules of Civil Procedure (CR) 54.04(1) provides that:

> Costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the Commonwealth, its officers and agencies shall be imposed only to the extent permitted by law.

In addition to these constitutional and statutory authorities, the Cabinet relies on *Ferguson v. Oates,* 314 S.W.2d 518 (Ky. 1958), where it was simply stated that the purpose of Section 230 of the Kentucky Constitution and KRS 41.110 "was to prevent the expenditure of the State's money without the consent of the Legislature." *Id.* at 521 (citation omitted).

The Cabinet has acknowledged that this Court has, on at least two occasions, affirmed trial court orders which directed the Cabinet to pay for the costs associated with child welfare actions. The Cabinet further contends, however, that these cases are distinguishable. In *G.G.L. v. Cabinet for Human Resources,* 686 S.W.2d 826 (Ky.App.1985), the Cabinet appealed from an order of the trial court which had directed it to pay for bus transportation for indigent parents to attend a hearing on the Cabinet's petition to involuntarily terminate their parental rights. We rejected the Cabinet's appeal out of concern that failure to pay the costs could lead to a violation of the parents' due process rights, by denying the parents access to a hearing "the outcome of which would determine their right to ever again see or communicate with their child." *Id.* at 829. We concluded that the court's order fell within the "its inherent powers to do that which is reasonably necessary for the administration of justice." *Id.*

The control over this inherent judicial power ... is exclusively within the constitutional realm of the courts. As such, it is not within the purview of the legislature to grant or deny the power nor is it within the purview of the legislature to shape or fashion circumstances under which this inherently judicial power may or may not be granted or denied.

*Id., citing Smothers v. Lewis,* 672 S.W.2d 62, 64 (Ky.1984)

Similarly, in *Cabinet for Human Resources v. Howard,* 705 S.W.2d 935 (Ky. App.1986), we held that the trial court was exercising its inherent powers to do what was reasonably necessary for the administration of justice in ordering the Cabinet to pay the fees for a guardian ad litem for the child and an appointed attorney for the parents. Significantly, in *Howard,* KRS 453.060(2) expressly authorized the court to assess such fees; the only question on appeal was determining against whom these fees could be assessed. *Cabinet for Human Resources v. Howard,* 705 S.W.2d at 937. The *Howard* court distinguished the circumstances from those in an earlier case, *Bradshaw v. Ball,* 487 S.W.2d 294 (Ky.1972), where it was held that an order by the court directing the Commonwealth to pay attorney's fees for indigent defendants violated "the doctrine of separation of powers because the judiciary's duty is not to 'appropriate money.'" *Bradshaw v. Ball,* 487 S.W.2d at 299. The Court explained as follows:

> The instant case differs because the guardian ad litem fees were not assessed against the Commonwealth in general, but against an agency of the Commonwealth which had already been appropriated money for its operation in the area of child health and welfare. In *Bradshaw v. Ball,* no money was set aside by the legislature to pay for attorney's fees, thus to uphold the trial court's ruling, the Court would force the executive branch to find the money from its gener-

al operating funds or request it from the legislature. Such action by the judiciary is impermissible.

*Cabinet for Human Resources v. Howard*, 705 S.W.2d at 938.

Although the funds for the drug screening in this case are also being assessed against the Cabinet in connection with its operation in the area of child health and welfare, and not against the Commonwealth in general, we do not believe that this fact on its own is sufficient to justify the trial court's order. We are aware of no specific statute authorizing the court to assess such payment. Furthermore, there appears to be no significant potential infringement of the parents' due process rights, as there was in *G.G.L. v. Cabinet*, which would serve to bring the issue within the purview of the court's inherent powers to administer justice. We therefore hold that, under the specific facts of this case, the court erred in ordering the Cabinet to pay the costs of the hair follicle drug screen testing.

The order of the Carter Circuit Court is reversed in accordance with this opinion.

ALL CONCUR.