**CABINET FOR HEALTH AND FAMILY SERVICES,**
Appellant

v.

**J.T.G. and A.G., an Infant, Appellees.**

**No. 2009–CA–000211–ME.**

Court of Appeals of Kentucky.

Dec. 4, 2009.

Jerry M. Lovitt, Georgetown, KY, for appellant.

J.T.G., Sadieville, KY, pro se.

Before LAMBERT and VANMETER, Judges; HARRIS,[1] Senior Judge.

---

1. Senior Judge William R. Harris, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

*OPINION*

LAMBERT, Judge.

The Cabinet for Health and Family Services appeals from the Scott Circuit Court, Family Division's order finding it in contempt for failing to pay child care assistance costs. After careful review, we vacate and remand.

This action began as a child custody case and originated in Jefferson Family Court. Initially, the child, A.G., resided with her mother and maternal grandmother in Louisville, Kentucky. A.G. was removed from her mother's care following a juvenile neglect petition filed by the Cabinet for Health and Family Services (hereinafter "the Cabinet") on or about November 17, 2004. The initial removal of the child was based upon displays of mental instability by the mother, including suicidal ideations, which resulted in the child's maternal grandmother taking out a Mental Inquest Warrant (MIW) on the mother. Following the MIW, the mother was hospitalized at the University of Louisville medical center.

Shortly after A.G.'s removal, the mother identified the child's maternal uncle, Appellee J.T.G., as a suitable relative placement for her daughter. Following a background check and a thorough home evaluation completed by the Cabinet, A.G. was then placed in the temporary custody of J.T.G., with supervised visitation allowed to the mother. Although A.G. was thriving in her uncle's home, visitations with her mother became increasingly more disruptive and difficult. One major complication was that J.T.G. resided in Scott County and A.G.'s mother was still living in Jefferson County. It became apparent that the best interests of the child would be served by giving permanent custody to J.T.G. and his paramour, C.S.

By order entered June 2, 2005, the Jefferson Family Court granted permanent custody of A.G. to J.T.G. and his long-time paramour, C.S. J.T.G. claims that he advised the Cabinet and the Jefferson Family Court that he would not be able to agree to permanent custody of A.G., due to limited finances, unless the Cabinet agreed to provide and pay for child care assistance and provide Kinship Care until the child was out of grade school. J.T.G. claims that the Cabinet considered this information and then advised the Jefferson Family Court Judge in open court that it would agree to provide and pay for childcare and provide Kinship Care. The June 2, 2005, order makes no mention of this agreement and we cannot find written evidence of the agreement in the record.

On August 10, 2005, the Jefferson Family Court transferred the action to Scott County at the request of J.T.G. and C.S. On or about August 23, 2005, the Scott Family Court accepted the transferred case and officially assigned it the case number of 05–J–00205–001. The Cabinet set up and paid for childcare from June 2005 through September 2008. Thereafter, the Cabinet advised J.T.G. that childcare payments for A.G. were not going to be made any longer. J.T.G. claims that he told the Cabinet he would not be able to pay for childcare and that the Cabinet advised him to return to Jefferson Family Court to get a written order for childcare.

On September 11, 2008, despite having transferred the action to Scott Family Court, the Jefferson Family Court ordered the Cabinet to provide daycare assistance for A.G. and to assist J.T.G. and C.S. in accessing other appropriate or available services such as Jumpstart. On November 21, 2008, J.T.G. returned to the Scott Family Court and filed a *pro se* motion to have the Jefferson Family Court's order enforced. The Scott Family Court issued an order for the Cabinet to show cause as to why it was not in contempt for failing to

comply with the Jefferson Family Court's order to pay daycare costs and ordered the Cabinet to immediately make the daycare account current.

On January 5, 2009, the Scott Family Court ordered the Cabinet to pay the outstanding balance and ongoing expenses per the "law of the case." On January 8, 2009, the Scott Family Court again ordered the Cabinet to pay daycare costs for A.G. and stated that per the law of the case and the order of the Jefferson Family Court, the Cabinet was ordered to pay the outstanding daycare balance and to continue paying the ongoing daycare expenses in addition to the kinship care J.T.G. received.

The Cabinet then filed a motion to alter, amend, or vacate the Scott Family Court's order, arguing that the September 11, 2008, order of the Jefferson Family Court was unconstitutional on its face, as its express terms violated the provisions of KRS 610.010(12) and the precedents set forth in both *Cabinet for Health & Family Services v. Huddleston*, 185 S.W.3d 222 (Ky. App.2006), and *Cabinet for Health & Family Services v. G.W.F.*, 229 S.W.3d 596 (Ky.App.2007).

On February 2, 2009, the Scott Family Court denied the Cabinet's motion to alter, amend, or vacate by reiterating that the Jefferson Family Court order was the "law of the case" and that the Cabinet had to pay A.G.'s daycare costs plus all arrearages by February 6, 2009, or be held in contempt of court. The Cabinet now appeals to this Court.

The Cabinet argues on appeal that the order of the Jefferson Circuit Court was void *ab initio* and was unconstitutional on its face. Further, the Cabinet argues that the Scott Family Court's reliance on the "law of the case" doctrine is misplaced and was in error. After careful review, we agree that the Jefferson Family Court order was void *ab initio* and that the Scott Family Court's reliance on the law of the case doctrine was erroneous.

■■ We review the trial court's denial of a motion to alter, amend, or vacate pursuant to Kentucky Rules of Civil Procedure (CR) 59.05 for an abuse of discretion. *See Batts v. Illinois Central Railroad Co.*, 217 S.W.3d 881, 883 (Ky.App.2007). The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000).

The Cabinet argues that the Scott Family Court did not utilize sound legal principles when it found that the Jefferson Family Court's order was "law of the case" since this order was void *ab initio*. We agree that the Jefferson Family Court lost jurisdiction over the matter once it was transferred to Scott Family Court and that the August 10, 2005, order of the Jefferson Family Court was therefore void *ab initio*.

■ Although the Jefferson Family Court order does not specifically state so, it appears that the transfer to the Scott County Family Court was pursuant to KRS 452.010. Section (1) of that statute states that "[t]he parties to any civil action in a Circuit Court may, by consent, have an order in or out of court for its removal to any other Circuit Court." Although the specific question of the transferor court's jurisdiction after a transfer takes place is one of first impression regarding civil matters, this issue has been addressed by Kentucky courts in the criminal law context.

In *Woods v. Commonwealth*, 285 Ky. 275, 147 S.W.2d 690, 691 (1941), the Court held that "when a case has been removed the court from which it came has been divested of jurisdiction[.]" Similarly, sec-

tion 25:14 of the Kentucky Criminal Practice Manual, entitled "Procedure after venue is changed," provides that "[t]he original court making the transfer has no further jurisdiction to prosecute the action as long as the transfer is in effect." 9 Ky. Prac. Crim. Prac. & Proc., § 25:14 (2008–2009).

This principle certainly makes sense in the context of child custody cases—if shared jurisdiction was possible, individuals would simply forum shop until they found a favorable court and then claim that their custody order was superior to the other courts' orders. In fact, addressing this problem was one of the fundamental reasons for the creation of the family court system in Kentucky. For example, in *Wallace v. Wallace*, 224 S.W.3d 587, 591 (Ky.App.2007), this Court expressly held that "Kentucky has created the family court system. The 'one judge, one family' approach is a remedy to the fractionalization of family jurisdiction."

Although the Cabinet did not challenge the validity of the September 11, 2008, Jefferson Family Court order until the denial of its CR 59.05 motion to alter, amend, or vacate, we are still permitted to address this issue on appeal. Questions of general jurisdiction "may be raised by the parties or the court at any time and cannot be waived." *Privett v. Clendenin*, 52 S.W.3d 530, 532 (Ky.2001) (citing *Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 47 (Ky.1996)). Moreover, the issue "may be raised for the first time on appeal." *Id.* (citing *Karahalios v. Karahalios*, 848 S.W.2d 457, 460 (Ky.App. 1993)).

 It is well established in Kentucky law that any order issued by a court that did not have proper jurisdiction is "void *ab initio* . . . is not entitled to any respect or deference by the courts." *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 833 (Ky.App.2008)

(internal citations omitted). Moreover, the Jefferson Family Court order is considered "a legal nullity, and a court has no discretion in determining whether it should be set aside." *Id.* (citing *Foremost Ins. Co. v. Whitaker*, 892 S.W.2d 607, 610 (Ky.App.1995)); *see also Wedding v. Lair*, 404 S.W.2d 451 (Ky.1966).

Applying the foregoing to the facts of the instant case, it is clear that the Jefferson Family Court did not have general jurisdiction when it issued the order dated September 11, 2008, given that it transferred the action to Scott Family Court on August 10, 2005. As a result, this order had no legal effect whatsoever, and the Scott Family Court's adoption and reliance on it was an abuse of discretion.

J.T.G. argues on appeal that the Scott Family Court also referenced the June 2, 2005, order of the Jefferson Family Court, which awarded him sole custody of A.G. J.T.G. claims that the June 2, 2005, order also established that the Cabinet was ordered to pay childcare costs and, thus, appears to argue that the Jefferson Family Court made an appropriate ruling as to childcare costs when it still retained jurisdiction over the case. A careful review of the record and the June 2, 2005, order denotes that no such mention of the Cabinet paying any costs was made by the Jefferson Circuit Court in its order. While it appears from the subsequent payments by the Cabinet for childcare from 2005 through September 2008 that the Cabinet did agree to pay such costs, it is not listed in the Jefferson Circuit Court's order, and we cannot find any other findings of fact adopted by that order in the record.

 Further, when the Scott Family Court adopted the void judgment of the Jefferson Family Court, the Scott Family Court asserted that the order was the "law .

of the case." However, in *Brooks v. Lexington–Fayette Urban County Housing Authority*, 244 S.W.3d 747, 751 (Ky.App. 2007), this Court held,

> [t]he law of the case doctrine is "an iron rule, universally recognized, that an opinion or decision of an **appellate court** in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." (Emphasis added) (citing *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky.1956)).

Thus, by its very definition, the law of the case doctrine only applies to cases that have first been appealed and then remanded back to the trial court. *See also H.R. ex rel. Taylor v. Revlett*, 998 S.W.2d 778 (Ky.App.1999).

More importantly, the specific question as to whether the law of the case doctrine applies to orders of the trial-level courts was resolved by the Kentucky Supreme Court in the case of *Dickerson v. Commonwealth*, 174 S.W.3d 451, 466–467 (Ky. 2005). There, the Court held:

> [a]s applied in Kentucky, the law of the case doctrine applies only to rulings by an appellate court and not to rulings by a trial court. *Scamahorne v. Commonwealth*, 376 S.W.2d 686, 687–88 (Ky. 1964). *See also United States v. Akers*, 702 F.2d 1145, 1147–48 (D.C.Cir.1983). While some courts take a more liberal view of the doctrine and have applied it to trial court rulings ... we decline to join them.

*Id. See also Buckley v. Wilson*, 177 S.W.3d 778 (Ky.2005). Thus, even if the Jefferson Family Court order was not void, the law of the case doctrine would not have been the proper legal doctrine to apply to this case and the Scott Family Court abused its discretion in so applying it.

The Cabinet argued in its CR 59.05 motion to alter, amend, or vacate that the Jefferson Family Court's September 11, 2008, order was unconstitutional because it violated KRS 610.010(12) and the precedents set forth in both *Cabinet for Health & Family Services v. Huddleston*, 185 S.W.3d 222 (Ky.App.2006), and *Cabinet for Health & Family Services v. G.W.F.*, 229 S.W.3d 596 (Ky.App.2007). In denying the cabinet's motion, the Scott Family Court did not address the merits of the Cabinet's argument and instead erroneously reiterated that the Jefferson Family Court's order was the "law of the case."

■ KRS 610.010(12) states:
Except as provided in KRS 630.120(5), 635.060(3), or 635.090, nothing in this chapter shall confer upon the District Court or the family division of the Circuit Court, as appropriate, jurisdiction over the actions of the Department of Juvenile Justice or the cabinet in the placement, care, or treatment of a child committed to the Department of Juvenile Justice or committed to or in the custody of the cabinet; or to require the department or the cabinet to perform, or to refrain from performing, any specific act in the placement, care, or treatment of any child committed to the department or committed to or in the custody of the cabinet.

Given that the Scott Family Court erroneously relied on the invalid order entered by the Jefferson Family Court, utilized an inapplicable legal doctrine in determining the merits of J.T.G.'s claims, and never made a proper finding as to whether this statute applied to the Cabinet and the facts of this case, we hold that the Scott Family Court abused its discretion in denying the Cabinet's CR 59.05 motion to alter, amend, or vacate its previous orders mandating the payment of childcare costs by the Cabinet.

Accordingly, we vacate the February 2, 2009, order of the Scott Family Court and remand with instructions for the court to reconsider the Cabinet's CR 59.05 motion in light of this opinion, including but not limited to a consideration of KRS 610.010(12) and its applicability to the facts of this case. The Court is instructed to disregard the invalid order entered by the Jefferson Circuit Court on September 11, 2008, as the order was void. Should the court determine that the Cabinet must pay childcare costs, it should issue a new order mandating such.

HARRIS, Senior Judge, concurs and files separate opinion.

VANMETER, Judge, dissents and files separate opinion.

HARRIS, Senior Judge, concurring.

I concur because I believe *Woods v. Commonwealth*, 285 Ky. 275, 147 S.W.2d 690 (1941), is dispositive of the issue before us; to wit, whether the Jefferson Family Court had jurisdiction to enter its September 11, 2008, order which is the predicate for the Scott Circuit Court orders under review in this appeal. It is significant to note that the Jefferson Family Court order bears case number 04–J–505589–001, notwithstanding that that case had previously been transferred to Scott Circuit Court, assigned a Scott County case number (05–J–00205–001), and never retransferred to Jefferson County. Consequently, the September 11, 2008, Jefferson Family Court order was entered in a nonexistent

2. Kinship care is established by KRS 605.120(5), which provides that "[t]o the extent funds are available, the cabinet may establish a program for kinship care that provides a more permanent placement with a qualified relative for a child that would otherwise be placed in foster care due to abuse, neglect, or death of both parents." Further, a "kinship caregiver who is dissatisfied with an

case and is a nullity, and it was an abuse of discretion for the Scott Circuit Court to endeavor to enforce it.

VANMETER, Judge, dissenting.

I respectfully dissent. Here, the Cabinet's brief and the majority opinion begin with the premise that because the case was transferred from the Jefferson Circuit Court to the Scott Circuit Court, the Jefferson Circuit Court lost subject-matter jurisdiction over the matter. However, in fact both the circuit courts possessed jurisdiction over the subject matter. *See Privett v. Clendenin*, 52 S.W.3d 530, 532 (Ky. 2001) (stating that "[s]ubject-matter jurisdiction refers to a court's authority to determine 'this kind of case' as opposed to 'this case[,]' " citing *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970)). While the record is clear that venue of the matter was transferred to the Scott Circuit Court, nothing prevented the parties from choosing to waive venue and return to the Jefferson Circuit Court, as happened here.

According to J.T.G., he originally agreed to take the child only after the Cabinet agreed in court to provide kinship care[2] assistance with child care expenses. Unfortunately, the record contains no written agreement or order for the payment of such funds. Meanwhile, in June 2005, J.T.G. and C.S. were named as the child's permanent custodians, and the case was transferred to the Scott Circuit Court for any further proceedings.

The Cabinet thereafter provided kinship care assistance for several years. When

action or inaction on the part of the cabinet relating to financial assistance under the Kinship Care Program shall have rights to a hearing pursuant to 921 KAR 2:055." 922 KAR 1:130, Section 19(2). Certainly, neither party has raised the administrative procedure, and to that extent, its consideration has been waived.

the Cabinet ceased paying for child care, J.T.G. was advised by a Cabinet representative that he should seek an order from the Jefferson Circuit Court directing the Cabinet to resume providing assistance. J.T.G. followed the advice and filed his motion in that court. Significantly, the Cabinet does not argue that it lacked notice of the motion or failed to appear at the hearing. However, the Cabinet failed to raise any issues at that time regarding venue. On September 11, 2008, the Jefferson Circuit Court entered an order directing the Cabinet to provide kinship care assistance. No appeal was taken and the order became final in October 2008.

In November 2008, J.T.G. sought enforcement of the order by the Scott Circuit Court. The Scott Circuit Court ordered enforcement of the order and this appeal followed.

Contrary to the Cabinet's arguments, this matter does not turn on whether the Jefferson Circuit Court had jurisdiction. Clearly, the court had subject-matter jurisdiction over this type of case. While the Cabinet could have challenged the Jefferson Circuit Court's exercise of venue, it did not do so. In other words, the issue of venue was waived. As noted by the Kentucky Supreme Court, venue, unlike jurisdiction, "may be conferred by waiver[.]" *Fritsch v. Caudill*, 146 S.W.3d 926, 927 (Ky.2004) (citing *James v. Holt*, 244 S.W.2d 159 (Ky.1951)). The court further noted in *Fritsch* that "while the concept of venue is important, it does not reach the fundamental level of jurisdiction, a concept whereby the authority of the court to act is at issue." 146 S.W.3d at 927 (citing *Duncan v. O'Nan*, 451 S.W.2d 626 (Ky.1970)). Because the Cabinet failed to object timely to the Jefferson Circuit Court's exercise of

venue, it implicitly agreed to that court's determination of the issue brought in J.T.G.'s motion, i.e., whether an agreement existed concerning the payment of certain child care expenses. Issues of jurisdiction and venue therefore did not prevent the Jefferson Circuit Court from entering its order, and the Cabinet's claim that the Jefferson Circuit Court's order was void *ab initio* must fail.

Next, the Cabinet claims that the Jefferson Circuit Court's order was unconstitutional on its face as being in violation of KRS 610.010(12), which specifically excludes from trial court jurisdiction those matters which involve the Cabinet's efforts to place, care for or treat children. However, a careful reading of the statute shows that it applies only to children who are "committed to or in the custody of the cabinet[.]" The child herein was neither committed to nor in the custody of the Cabinet during the time in issue, and the record is clear that J.T.G. is the child's permanent custodian. The statute therefore is not applicable to the court's efforts to enforce the order directing the Cabinet to pay child care costs.

Finally, regardless of whether the Jefferson Circuit Court's order was the "law of the case," certainly the Scott Circuit Court was obligated to enforce the final order issued by that court. No error occurred.

The Scott Circuit Court's order should be affirmed.