LAKE VILLAGE WATER
ASSOCIATION, INC.,
Appellant,

v.

Glenn SORRELL, Aubry Sivis and
Jennie Sue Sivis, Appellees.

No. 90–CA–000758–MR.

Court of Appeals of Kentucky.

Sept. 20, 1991.

William L. Stevens, Taylor & Stevens, Danville, for appellant.

William R. Meredith, Harrodsburg, for appellees.

Before EMBERTON, HUDDLESTON and WILHOIT, JJ.

HUDDLESTON, Judge.

This is an appeal from a judgment after a jury trial awarding landowners $1,600.00 for the easement taken by the appellant, Lake Village Water Association, Inc. At issue is whether the jury's award is supported by the evidence. We affirm.

In March, 1988, Lake Village, a utility providing water to approximately 1,400 customers in Boyle and Mercer Counties, filed a petition under KRS 416.580, seeking condemnation of two easements on the appellees' property for the purpose of installing water lines. Three commissioners were appointed who opined in a March 15, 1988, report that the difference in the fair market value of the property immediately be-

fore and after the taking was a total of $1,600.00. The values of Easement #1 both before and after the taking were determined to be $85,000.00 and $83,800.00, respectively. The before and after values of Easement #2 were assessed at $10,000.00 and $9,600.00, respectively. On June 8, 1988, an interlocutory judgment was entered affirming the right to condemn and take possession upon payment of $1,600.00 to the clerk of the court. Both parties filed exceptions to the Commissioner's report and a jury trial resulted in a $1,600.00 judgment. This appeal followed.

Lake Village argues on appeal that the verdict is excessive and not supported by the evidence inasmuch as the commissioners testified at trial that the property has actually increased in value because of the waterline. The testimony was as follows.

Henry Stratton, a real estate broker appointed as one of the commissioners, explained that the property is divided into four separate tracts, only one of which contains a residence. He testified that before the taking, the property concerning Easement #1 was valued at $85,000.00, and after the taking $87,500.00. He valued the property involving Easement #2 as having been $10,000.00 before the taking and $11,000.00 afterward. Stratton explained the reason that his "after" values differed from that contained in their report. He stated that water companies often do not restore the land and sod back to its original state and that the commissioners allowed $400.00 for each of the four lots. When he returned to the property at some later date he noticed that the land had been restored. As a result, he felt that the value of the land had been enhanced.

Stratton also testified, however, that such an easement restricts the landowners' use of the property to some degree in that they are prohibited from building on that portion of their property. On cross-examination, Stratton further explained his discrepancy:

Q. Now, you testified earlier that on direct examination I believe that you increased the value today to this jury for

the first time to my knowledge and to Mr. Sorrell's knowledge that the value today is $87,500.00?

A. Yes, sir.

Q. Is that today or is it back in 1988 when you appraised it?

A. That's today.

Q. That's today?

A. Yes, sir.

Q. What's the value in 1988? What was the value then?

A. The value as I saw it in 1988 is what I put down.

Q. Before and after value?

A. Yes, sir.

Q. But today you [sic] just saying it's worth $87,500.00?

A. I say it's worth that because the water line [is] in place, I feel like it's enhanced the value of the property and the land has been returned to its like condition.

Ronald Hurst, a real estate broker and builder, was also appointed as one of the commissioners. He testified that the value of the property concerning Easement #1 increased from $85,000.00 before the installation of the waterline to $87,000.00 or $88,000.00 afterward. As for Easement #2, he stated that the land value increased from $10,000.00 to $12,000.00. He explained the discrepancy between his testimony and the report:

Well, evidently the property had been—they had been doing construction work. The property had been dug up, so naturally, the value would be less. And then after the line's installed and the property put back in its original condition, it would be considerably more.

James Sexton was the final real estate broker/commissioner who testified. He stated that the value of the property involving Easement #1 was $88,000.00 before installation and afterward was worth no less. He estimated a total value of $95,000.00 for both areas. Sexton's reason for the discrepancy between his testimony and the report was identical to Stratton's: he also stated that the water line enhanced the value.

Appellee Glenn Sorrell testified that he installed his own waterline at a cost of $2,000.00 in 1980, and Lake Village installed a meter. He was satisfied with the condition of the land after the water pipes were installed. His complaint was that "I don't own as much land as I once did."

On appeal, Lake Village argues that the verdict was excessive and unsupported by the evidence. We disagree.

Although at trial the commissioners attempted to explain away their original report, the jury was entitled to believe their earlier inconsistent statements concerning the before and after values of the land. Under CR 43.07, a witness may be impeached by contradictory evidence showing that he has made statements different from his trial testimony. *Reams' Adm'r. v. Greer*, Ky., 314 S.W.2d 511 (1957). This rule applies equally to condemnation cases. *Decker v. Commonwealth*, Ky., 421 S.W.2d 369 (1967).

Decker involved acquisition of land for the construction of a highway:

Witness Wesley testified for the appellants and ascribed [a] significantly high value to the appellants' land by reason of its frontage along existing U.S. Highway 27. Upon cross-examination the trial court permitted counsel for the Department to bring out that witness Wesley had testified concerning a nearby tract of land located on the same highway on an earlier occasion. The brunt of the testimony of the witness in the earlier trial was to the effect that no enhancement resulted because of the property's location on the very same highway.... CR 43.07 furnishes appropriate basis for the cross-examination in this case. The Department was entitled to show that the witness had previously opined that location on U.S. 27 did not enhance property situated comparably to the property of the appellants in face of his testimony in the present case to the contrary....

In addition to utilizing the prior inconsistent statements for impeachment purposes, they also may be used as substantive evidence. *Jeff v. Commonwealth*,

Ky., 436 S.W.2d 788 (1969). *Mounce v. Commonwealth,* Ky., 795 S.W.2d 375 (1990); *Muse v. Commonwealth,* Ky.App., 779 S.W.2d 229 (1989).

It is important to note that the commissioners each took an oath to enter upon the property and report on the fair market value both immediately before and immediately after the taking. KRS 416.580, a part of Kentucky's eminent domain law, provides, in pertinent part:

(1) The circuit court, or in the absence of the circuit judge from the county, the circuit court clerk, shall appoint as commissioners three (3) impartial housekeepers of the county who are owners of land. *They shall be sworn to faithfully and impartially discharge their duties under this section. The commissioners shall view the land or material sought to be condemned and award to the owner or owners such a sum as will fairly represent the reduction in the market value of the entire property,* all of or a portion of which is sought to be condemned, said sum being the difference between the market value of the entire property immediately before the taking and the market value of the remainder of the property immediately after the taking thereof, together with the fair rental value of any temporary easements sought to be condemned. (Emphasis supplied.)

The commissioners' report specifically provided that the figures arrived at represented the fair market value immediately before the taking and immediately after the taking. The commissioners' report, executed while they were duly sworn, is sufficient evidence to support the jury's $1,600.00 award.

Next, we consider the motion filed by appellee Sorrell to dismiss this appeal and award damages and costs pursuant to CR 73.02(4). Under this rule, an appeal is frivolous, justifying an award of damages and costs to the appellee, if the court finds that the appeal is so totally lacking in merit that it appears to have been taken in bad faith.

■ In addition to express authority to award fees and costs, the United States Supreme Court has recently held that a *federal* court may invoke its *inherent* power to impose attorney's fees and related expenses on a party as a sanction for bad faith conduct, regardless of the existence of statutory authority or remedial rules. *Chambers v. Nasco,* 501 U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). We believe that the courts of this Commonwealth have similar authority.

■ We find that CR 73.02(4) is applicable in this case and direct that the trial court award the appellees reasonable attorney's fees and costs incurred in the prosecution of this appeal to be paid by Lake Village. By appealing a paltry $1,600.00 award when there clearly was evidence to support it, Lake Village has effectively denied the appellees just compensation for the condemned property in violation of Section 13 of the Kentucky Constitution. The judgment of Mercer Circuit Court is affirmed, but this case is remanded for a determination and award to the appellees of reasonable attorney's fees and costs incurred in the prosecution of this appeal.

EMBERTON, J., concurs.

WILHOIT, J., concurs in part and dissents in part and files a separate opinion.

WILHOIT, Judge, concurring in part and dissenting in part:

I concur with the result reached by the majority except as to its conclusion that this appeal was taken in bad faith and its remand to award fees and costs to the appellees. While I am sympathetic with the appellees because of the costs they might have incurred in this proceeding, it seems to me that the peculiar facts of this case raised a legal question which was not frivolous. If an award of "a paltry $1600.00" should not be appealed, then the people of Kentucky, not this Court, need to amend Section 115 of our Constitution.