**KENTUCKY RETIREMENT
SYSTEMS, Appellant,**

v.

**Barbara FOSTER, Appellee.**

No. 2009–CA–001369–MR.

Court of Appeals of Kentucky.

July 23, 2010.

Discretionary Review Denied by
Supreme Court June 8, 2011.

Schuyler Olt, Katherine Rupinen, Frankfort, KY, for appellant.

Debra H. Dawahare, Leila G. O'Carra, Lexington, KY, for appellee.

Before MOORE and THOMPSON, Judges; WHITE,[1] Senior Judge.

1. Senior Judge Edwin M. White sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Ken-

## OPINION

MOORE, Judge:

Kentucky Employees Retirement Systems ("KERS") appeals the Franklin Circuit Court's decisions to: 1) deny KERS relief from a court order granting Barbara Foster's request to purchase twenty-three months of service credit for the time she was employed as a professor at the University of Kentucky; 2) hold KERS in contempt for refusing to allow Foster to purchase those twenty-three months of service credit; 3) impose the expense of Foster's attorney's fees upon KERS as a sanction for contempt; 4) direct KERS to restore a month of sick leave service credit KERS removed following an audit of her account; and 5) enjoin KERS from further auditing or adjusting Foster's account below a total of 325 months of service credit. For the reasons stated herein, we affirm the first three of these rulings and vacate the latter two.

## I. STATEMENT OF FACTS

In 2002, Foster made three written requests to purchase service credit from KERS with the intention of maximizing her future state-government retirement benefits. In May of 2002, Foster asked to purchase service credit for her work at the Internal Revenue Service from April 10, 1978, through August 7, 1982. In July of 2002, Foster asked to purchase service credit for her work at the United States District Court from November 1, 1991, through August 28, 1992. In August of 2002, Foster requested to purchase service credit for two periods of employment at the University of Kentucky: 1) student employment from July 1, 1977, through February 28, 1978; and 2) employment as a full-time visiting assistant professor from July 1, 1982, through June 1, 1984.

KERS calculated the number of months of service credit available for purchase in each instance, with the exception of Foster's employment as a professor at UK. KERS offered Foster fifty-two months of service credit for her IRS employment, ten months for her district court employment, and eight for her UK student employment. On October 28, 2002, Foster purchased all seventy months. With respect to Foster's employment as a professor at UK, however, KERS determined that Foster was not eligible to purchase any service credit and its general counsel sent Foster a letter to this effect on February 21, 2003.

Subsequently, Foster initiated administrative proceedings, specifically requesting that KERS grant her the right to purchase twenty-three months of service credit for that employment. On June 21, 2004, a KERS hearing officer denied Foster's request to purchase that service credit. Foster appealed to the Board of Trustees and, on June 18, 2005, Foster was notified that the Board had affirmed the hearing officer's decision.

On July 15, 2005, Foster appealed to the Franklin Circuit Court. On September 19, 2006, the circuit court reversed KERS and specifically held that Foster was entitled to purchase twenty-three months of service credit representing her tenure as a professor at UK. KERS then appealed to this Court and its sole contention of error was that a proper construction of the relevant statutes mandated that instructional positions, such as the one at which Foster was employed, did not qualify for any service credit. However, we upheld the circuit court's decision. *See Kentucky Employees Retirement Systems v. Foster*, 272 S.W.3d 198 (Ky.App.2007).[2] The Supreme Court

tucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

**2.** Throughout the remainder of this opinion, we refer to this matter as *"Foster I."*

of Kentucky denied discretionary review of our decision on January 14, 2009.

On February 13, 2009, Foster requested to purchase the twenty-three months of service credit that were at issue in *Foster I*. On March 19, 2009, KERS again refused Foster's request, this time citing the results of an audit it had performed on her retirement account after the Supreme Court denied discretionary review in *Foster I*. In relevant part, KERS stated that 1) Foster's UK employment from July 1, 1982, through June 1, 1984, encompassed twenty-four months rather than twenty-three months; 2) Foster was not eligible to purchase two of her twenty-four months of UK service credit, *i.e.*, July and August of 1982, because they overlapped with her employment with the IRS; 3) Foster's employment with the IRS, from April 1978 through August 1982, encompassed fifty-three months rather than fifty-two months; 4) Foster was entitled to purchase this newly discovered fifty-third month of service credit for her work at the IRS; 5) Foster had only five months of sick leave service credit rather than six months at the time she retired, making her liable to KERS for $1,101.05 in overpayments; and 6) this was a final administrative decision regarding the sick leave and must be appealed within thirty days.

Prior to KERS' audit, KERS had informed Foster that she had a total of 301 months of service credit and, therefore, the purchase of an additional 23 months would, in that case, have left her with a total of 324 months. However, the result of KERS' audit left Foster with a total of 323 months of service credit. Specifically, KERS had allowed Foster to purchase an additional month of service credit for her employment with the IRS but had subtracted one month of sick leave service credit and had subtracted another month after discovering that one of the twenty-three months described in the September 19, 2006 order overlapped with a month of Foster's employment with the IRS which Foster had already purchased in 2002.

Consequently, because KERS members in nonhazardous positions, such as Foster, do not become eligible for full retirement benefits until they have reached age 65 or have accumulated 324 months of service credit, Foster was now one month short of full retirement benefits. *See* KRS sections 61.510(18), 61.595, and 61.595(2)(b). On March 30, 2009, Foster requested KERS to comply with the circuit court's judgment regarding the purchase of UK service credit and also demanded KERS restore the amount of her sick leave service credit to six months. KERS instead informed Foster that it would treat her March 30, 2009 letter as a request for an administrative hearing, and, on April 3, 2009, moved the Franklin Circuit Court for relief from its September 19, 2006 order, pursuant to Kentucky Rules of Civil Procedure (CR) 60.02.

Foster purchased the twenty-two months of UK service credit and one month of IRS service credit that KERS offered. However, Foster opposed KERS' CR 60.02 motion on the basis of *res judicata*. She also filed her own motion with the circuit court to hold KERS in contempt of the September 19, 2006 order for refusing to allow her to purchase the full twenty-three months of service credit described in the circuit court's September 19, 2006 order, and for removing one month of sick leave service credit from her retirement account.

On July 1, 2009, the circuit court held KERS in contempt; it also ordered the further relief specified earlier in this opinion. In a separate order of July 22, 2009, the circuit court also denied KERS' motion for relief from judgment. The circuit

court's July 1 and July 22, 2009 orders are the subject of this appeal.[3]

## II. ANALYSIS

### A. THE JULY 22, 2009 ORDER DENYING CR 60.02 RELIEF

■ To analyze KERS' CR 60.02 arguments, it is first necessary to address whether *res judicata* bars KERS from reducing the number of service credit months Foster is entitled to purchase, from twenty-three to twenty-two, to account for the overlap between her IRS employment and UK employment which KERS discovered during its 2009 audit of her account. We conclude that KERS is barred from doing so, but *res judicata* does not act as the bar in this case. Rather, it is the doctrine of the law of the case.

This Court recently described the nature of the law of the case doctrine in *Brooks v. Lexington–Fayette Urban County Housing Authority,* 244 S.W.3d 747 (Ky.App.2007):

> Our Supreme Court said that "where a contention was not made, if it could or should have been made on appeal, the doctrine of *res judicata* prevented relitigation [sic] of the same contention in a subsequent appeal." *Lebow v. Cameron,* 394 S.W.2d 773, 778 (Ky.1965) (Citation omitted). This is essentially an expression of the law of the case doctrine.

*Id.* at 750. *Brooks* further stated:

> The law of the case doctrine is "an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *Union Light, Heat & Pow-*

er Co. v. Blackwell's Adm'r, 291 S.W.2d 539, 542 (Ky.1956). The doctrine is predicated upon the principle of finality.

> The law of the case rule is a salutary rule, grounded on convenience, experience and reason. It has been often said that it would be intolerable if matters once litigated and determined finally could be relitigated between the same parties, for otherwise litigation would be interminable and a judgment supposed to finally settle the rights of the parties would be only a starting point for new litigation.

*Id.* The law of the case doctrine is similar to but distinct from the doctrine of *res judicata.* "There is a difference between such adherence (the law of the case doctrine) and *res adjudicata.* One directs discretion; the other supersedes it and compels judgment. In other words, in one it is a question of power, in the other of submission." *Southern Ry. Co. v. Clift,* 260 U.S. 316, 43 S.Ct. 126 [127], 67 L.Ed. 283, 284 (1922).

*Sowders v. Coleman,* 223 Ky. 633, 4 S.W.2d 731 (1928), enunciates that the doctrine considers as settled "all errors lurking in the record on the first appeal which might have been, but were not expressly, relied upon as error."

*Id.* at 751.

The issue in *Brooks* related to judgment interest accruing upon an award of damages against a governmental agency, *i.e.,* a housing authority. Applying the law of the case doctrine, this Court held that the housing authority was liable for that judgment interest in spite of established precedent precluding the assessment of judgment interest against the

---

**3.** The administrative proceedings regarding Foster's sick leave service credit have been stayed pending the outcome of this appeal.

housing authority in that instance. This Court reasoned:

> In view of *Sowers*, and regardless whether the question was litigated in the first instance, it is evident that the law of the case doctrine is applicable to the present case and the explicit decision to award interest, whether correct or erroneous, was finally made on that matter in the first appeal. When the Supreme Court remanded the case to the circuit court silent about the post-judgment interest award contained in the 1997 interlocutory judgment, the Court established as the law of the case that the Housing Authority is liable for such interest. Therefore, the Housing Authority's motion to set aside the interest in the court below was nothing more than an attempt to relitigate an issue previously decided.... The Housing Authority should have taken procedural steps to ensure deletion of the interest at issue, which otherwise it was obliged to pay, at the time the appellate decisions were rendered. "Upon failure to take such procedural steps, a party will thereafter be bound by the entire opinion." [Citing *Williamson v. Commonwealth,* 767 S.W.2d 323, 326 (Ky.1989).]

*Brooks,* 244 S.W.3d at 751.

The case at bar is analogous to *Brooks.* Here, the underlying issues in *Foster I* were not limited to whether Foster was entitled to purchase service credit months for working as an instructor at UK; an additional and central issue in that action was the number of months of service credit she was entitled to purchase by virtue of that employment. At the administrative level, she specifically requested to purchase twenty-three months of service credit. After her request was denied, she appealed to the Franklin Circuit Court, where her specific prayer for relief was:

> 5. That this Court reverse the Final Order of the KERS and direct that Ms. Foster be allowed to purchase 23 months of service credit from her employment at the University of Kentucky from 1982–84 under KRS 61.552(8), and that KERS be enjoined to grant this right to Ms. Foster retroactive to August 23, 2002, the date of her original request to purchase this service credit.

In this regard, the circuit court did not grant Foster any relief beyond what she requested when it found in her favor and held, explicitly: "[Foster] is declared eligible to purchase twenty-three (23) months of service credit from [KERS] for her work as an instructor at UK."

Between the administrative and trial levels, however, the only contention that KERS made for refusing to sell Foster twenty-three months of service credit was that it interpreted KRS 61.520 and KRS 61.552(8) to mean that instructional employees at UK did not qualify to purchase service credit. Thus, when the circuit court held in favor of Foster, the only issue that KERS appealed was whether Foster was entitled to purchase any service credit at all; it did not appeal the circuit court's additional determination that Foster was specifically entitled to purchase twenty-three months of service credit. *See Foster I,* 272 S.W.3d at 199. As in *Brooks,* however, the law of the case precludes KERS from contesting this issue now, even if the facts in support of the circuit court's holding were erroneous in that respect, because KERS did not raise it as an issue on appeal of *Foster I* before either the circuit court or this Court and the issue of the twenty-three months was ruled upon in *Foster I.*

KERS has not invoked CR 60.01 in order to contend that the circuit court's holding in *Foster I*—that Foster is specifically entitled to purchase twenty-three months

of service credit for her work at UK—is the result of a clerical error. Nor, for that matter, does KERS contend that the circuit court's holding in that previous matter is void. Rather, KERS contends that it is entitled to relief from the circuit court's September 19, 2006 order, pursuant to CR 60.02, under three separate grounds enumerated by this rule: "mistake, inadvertence, surprise or excusable neglect" (CR 60.02(a)); satisfaction of the judgment (CR 60.02(e)); and "any other reason of an extraordinary nature justifying relief." (CR 60.02(f)). We disagree.

■ In general, CR 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could reasonably have been presented by direct appeal. *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky.1997). Rather, the rule was intended to codify the common-law writ of *coram nobis*. "The purpose of such a writ was to bring before the court that pronounced judgment errors in matters of fact which (1) had not been put into issue or passed on, (and)(2) were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court." *Davis v. Home Indem. Co.*, 659 S.W.2d 185, 188 (Ky.1983) (citing *Gross v. Commonwealth*, 648 S.W.2d 853 (Ky.1983)). To this effect, CR

60.02 enumerates certain grounds, including (a), (e), and (f) as cited above, upon which, "[o]n motion, a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding."

■ We believe the circuit court correctly denied KERS relief under CR 60.02(a)[4] because the circuit court was precluded from reviewing any argument KERS offered under that provision. The rule itself states that "[t]he motion shall be made . . . on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken[,]" and KERS did not move for relief from the circuit court's September 19, 2006 order until 2009.

KERS argues that a judgment, for purposes of CR 60.02, is not considered "final" until after all appeals are exhausted and the Supreme Court denies certiorari. It reasons that because the Supreme Court of Kentucky did not deny certiorari in *Foster I* until 2009, its CR 60.02(a) argument was timely.

However, as the former Court of Appeals stated in *Meredith v. Commonwealth*, 312 S.W.2d 460, 462 (1958):

The remedy provided by CR 60.02(1, 2,

---

4. KERS' argument under CR 60.02(a) is that "While attempting to comply with Franklin Circuit Court's Order dated September 19, 2006, KERS discovered new evidence through mistake, inadvertence, surprise or excusable neglect that would prevent it from being able to fully comply with the Franklin Circuit Court's Order dated September 19, 2006 while still fulfilling its statutory mandate."

"[N]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02" is also described as a ground under CR 60.02 for relief from judgment, specifically under part (b) of the rule. KERS did not

include this ground as a basis for relief in its original CR 60.02 motion before the trial court and appears to have combined this new argument with its previous argument under CR 60.02(a). In making this argument for the first time before this Court, it is arguably improper for this Court to review it. However, this argument would not have been properly raised even if it were before the trial court because any argument under either CR 60.02(a) or (b) must be raised "not more than one year after the judgment[.]" CR 60.02. Final judgment in this matter was entered in 2006 and KERS did not raise this argument until 2009.

and 3[5]), must be sought within the year even though an appeal is being prosecuted. The remedy is available even though the appeal is duly perfected and pending decision in this Court. It would continue to be available if this Court, by rare chance, should have its mandate of affirmance in hands of the trial court before the expiration of the year. *Wolfe v. Combs' Adm'r, Ky.,* 273 S.W.2d 33 [ (1954) ]. In other words the remedy is in no way affected by the appeal and the appeal is in no way affected by the remedy.

■ We turn next to KERS' remaining arguments under CR 60.02. Under CR 60.02(e), KERS argues that four years prior to the circuit court's judgment in *Foster I,* it partially satisfied that judgment and that the number of service credit months the circuit court ordered it to sell Foster should be reduced from twenty-three to twenty-two because it had already sold Foster service credit for the period during which Foster's UK and IRS employment overlapped. Similarly, under CR 60.02(f), KERS argues that because it has already sold service credit to Foster for those two months, a court order forcing it to resell service credit representing those two months conflicts with the plain language of KRS 61.545(1): "It [the Board of Trustees of the Kentucky Retirement Systems] shall not allow credit for more than one (1) year of service for all service rendered in any period of twelve (12) consecutive months[.]"

However, KERS cannot find relief under the purview of CR 60.02 under either of these theories. As stated in *Board of Trustees of Policemen's and Firemen's Retirement Fund of City of Lexington v. Nuckolls,* 507 S.W.2d 183, 186 (Ky.1974):

> In those instances where grounds ... for relief under a 60.02 motion are such that they were known or could have been ascertained by the exercise of due diligence prior to the entry of the questioned judgment, then relief cannot be granted from the judgment under a 60.02 proceeding. Relief afforded by a 60.02 proceeding is extraordinary in nature and should be related to those instances *where the matters do not appear on the face of the record, were not available by appeal or otherwise, and were discovered after rendition of the judgment without fault of the party seeking relief.*

(Emphasis added.)

Here, the information leading to KERS' discovery of the overlap in Foster's employment through its 2009 audit, upon which KERS bases both of these theories, was in KERS' possession in 2002. This was two years prior to the Board's final administrative decision on June 21, 2004, and four years prior to the circuit court's September 19, 2006 order. Consequently, KERS cannot contend that it is without fault for discovering this overlap after rendition of the circuit court's judgment.

Additionally, both of these theories would merely demonstrate that the circuit court's September 19, 2006 holding was erroneous, *i.e.,* that Foster was not entitled to purchase twenty-three months of service credit. As noted above, KERS already had an opportunity to demonstrate that this specific holding was erroneous during its appeal of *Foster I,* and it failed to do so. As such, this fact likewise pre-

---

**5.** At the time of the *Meredith* decision, the provisions of CR 60.02 allowing relief on grounds of "mistake, inadvertence, surprise or excusable neglect" and "newly discovered evidence" were labeled "60.02(1)" and "60.02(2)," respectively. Subsequent to amendment in 1978, "60.02(1)" was replaced with "60.02(a)," and "60.02(2)" was replaced with "60.02(b)."

cludes KERS from invoking any provision of CR 60.02 for relief from the circuit court's September 19, 2006 judgment.

In light of the above, we affirm the circuit court's decision to deny KERS CR 60.02 relief. To be clear, however, our holding in this opinion that Foster is eligible to purchase twenty-three months of service credit for her employment with UK, irrespective of any overlaps it had with her employment with the IRS, does not constitute authority for the proposition that any person might qualify to purchase service credit in excess of the limit that KRS 61.545(1) prescribes. Rather, the result of this case, to paraphrase *Brooks*, 244 S.W.3d at 753, is the consequence of a valid judgment coupled with operation of a valid legal doctrine—the law of the case doctrine—that binds KERS to sell the total twenty-three months of service credit at issue.

## B. THE JULY 1, 2009 ORDER ENFORCING THE SEPTEMBER 19, 2006 JUDGMENT

When the circuit court entered its July 1, 2009 order to enforce its September 19, 2006 judgment, the effect of that order was five-fold: 1) it directed KERS to sell Foster twenty-three months of service credit for her work as an instructor at UK; 2) it directed KERS to restore one month of sick leave service credit to Foster's retirement account, which KERS removed from her account after the rendition of *Foster I*; 3) it directed KERS to recalculate and adjust Foster's retirement benefits to include the full retirement benefits that her 325 months of service credit [6] entitled her to receive and enjoined KERS from alter-

ing Foster's retirement account balance to anything less than 325 months; 4) it found KERS to be in contempt of the circuit court's September 19, 2006 order; and 5) it ordered KERS to pay an amount of $18,885, representing the attorney's fees Foster incurred challenging KERS' CR 60.02 motion.

As stated above, we find no error with respect to the first directive of the circuit court's order. We now address the latter four directives, in turn, below.

## 1. SICK LEAVE CREDIT

■ KERS' decision to remove one month of sick leave service credit from Foster's account, reducing her total months of sick leave credit from six to five, may be a moot point. As noted, Foster is entitled to purchase fully twenty-three months of service credit for her employment at UK and, as KERS acknowledges, KERS also discovered and allowed Foster to purchase an additional month of service credit corresponding to her employment with the IRS, representing April 1978. Foster is in the same position in which she would have been had KERS taken no action against her at all or found no additional service credit months for Foster to purchase, following our decision in *Foster I*: the total months of service credit to which Foster is entitled remains 324.

■ Nevertheless, the circuit court erred when it held that KERS must restore Foster's month of sick leave service credit. As a general rule, "a judgment cannot properly adjudicate a matter not within the pleadings." *Buskirk v. Joseph*,

6. The trial court calculated that Foster had 325 months of service credit, rather than 324, after considering that 1) Foster had 301 months of service credit to begin with; 2) KERS was not entitled to subtract one month of sick leave service credit from this figure; 3) KERS was required to offer Foster 23 months of UK service credit; and 4) KERS had discovered, and allowed Foster to purchase, an additional month of service credit for her IRS employment.

313 Ky. 773, 233 S.W.2d 524, 527 (1950); *see also Nagle v. Wakefield's Adm'r*, 263 S.W.2d 127, 129–30 (Ky.1953). And here, the only matter before the circuit court was whether Foster's employment at UK entitled her to purchase twenty-three months of service credit from KERS, and the only relief Foster requested in her pleadings was the right to purchase those months. Consequently, it was improper for the circuit court to make any ruling on the subject of sick leave service credit.

Foster puts forth three arguments as to why KERS should be barred from contesting, in a separate proceeding, the number of months of sick leave service credit she is entitled to receive. The first argument is based upon *res judicata*; the second is based upon the doctrine of futility; and the third is based upon equitable estoppel. Collectively, they are insufficient for this Court to ignore the long-standing principle of the exhaustion of remedies doctrine.

■ With regard to her first argument, the doctrine of *res judicata* provides that an existing final judgment rendered upon the merits is conclusive of a cause of action and of facts or issues litigated. *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 464 (Ky.1998). However, the *res judicata* rule does not mean that the prior judgment is conclusive of matters which were not germane to, implied in, or essentially connected with the actual issues in the case, although they may affect the ultimate rights of the parties and might have been presented in the former action. *Hays v. Sturgill*, 302 Ky. 31, 193 S.W.2d 648, 650 (1946).

Here, Foster did not ask the circuit court to determine the total number of service credit months she was entitled to purchase from KERS, or enforce any warranty relating to sick leave service credit. Rather, the only issue before the circuit court was the number of months Foster was qualified to purchase by virtue of her employment with UK. Foster's sick leave service credit was not germane to, implied in, or essentially connected with the circuit court's resolution of that matter. As such, *res judicata* does not apply.

■ With regard to her second argument, Foster argues that the doctrine of futility applies to the issue of her sick leave service credit because 1) further administrative review on that issue would result in a decision on the same issue by the same body; 2) KERS will not provide her with a fair and impartial hearing; and 3) KERS had no probable cause to re-audit her KERS account and, therefore, was prohibited from doing so by virtue of KRS 61.685, and thus lacked any basis for contesting her sick leave service credit.

As to her first point, our discussion on the subject of *res judicata*, stated above, is equally applicable; we have already determined that the issue of Foster's sick leave is separate from the issue of Foster's service credit. As to her second point, Foster's assertion that an administrative body is incapable of providing a fair and impartial hearing is not grounds for futility. As to her third point, there is nothing in KRS 61.685 that states any kind of probable cause requirement for re-auditing KERS accounts, or otherwise prohibits KERS from re-auditing Foster's account; KRS 61.685 simply grants KERS authority to audit KERS accounts. Certainly, the law of the case now precludes KERS from altering or re-auditing Foster's entitlement to twenty-three months of service credit for her employment at UK; however, it does not preclude KERS from altering or re-auditing Foster's amount of sick leave service credit.

■ Finally, with regard to her third argument, the question of whether the Board is equitably estopped from reducing

any of Foster's retirement benefits, or her entitlement to any service credit months outside of the twenty-three service credit months related to her employment with UK, is not simply unrelated to this matter; it is a question of fact to be decided first at the administrative level, rather than at a trial court. *See Board of Trustees, Kentucky Retirement Systems v. Grant,* 257 S.W.3d 591 (Ky.App.2008).

In *Grant,* the circuit court determined that KERS was equitably estopped from reducing a claimant's benefits following his retirement. On appeal to this Court, Kentucky Retirement Systems contended that equitable estoppel could not be invoked to prevent an agency from fulfilling its statutory duties and that the circuit court misapplied the doctrine. This Court initially observed that Kentucky Retirement Systems erroneously refused to consider equitable estoppel. We also held that the circuit court erred as it "undertook an examination of the facts of the case and found on its own that ... [Kentucky Retirement Systems] was estopped from reducing ... [the] retirement benefit below the amount of its estimate ... before ... retirement." *Id.* at 593. Finally, this Court concluded that equitable estoppel presented a "question of fact" that must be initially determined by the Board. *Id.* at 594. Consequently, this Court vacated the judgment of the circuit court and remanded to the Board of Trustees for such findings of fact.

In the case at bar, we similarly conclude that if Foster wishes to invoke the doctrine of equitable estoppel against KERS to prevent it from reducing Foster's entitlement to sick leave service credit, or any other benefits, the proper forum for doing so is at the administrative level. And, because Foster's sick leave was never at issue in this case, Foster must do so in a separate administrative proceeding.

## 2. THE 325 MONTHS OF TOTAL SERVICE CREDIT

█ Likewise, when the circuit court directed KERS to recalculate and adjust Foster's retirement benefits to reflect 325 months of service credit with full benefits, and enjoined KERS from altering or re-auditing Foster's retirement account balance to anything less than 325 months, it also adjudicated issues not raised in the pleadings of *Foster I:* at no time did Foster ever ask the circuit court to determine the total number of service credit months she was entitled to purchase from KERS, or whether she was eligible to retire with full benefits. Consequently, our discussion relating to the issue of Foster's sick leave service credit is equally applicable to these portions of the circuit court's order. And, for the same reasons, we find that they were equally erroneous.

## 3. CONTEMPT

█ KERS contends the circuit court abused its discretion when it held KERS in contempt for failing to obey its September 19, 2006 order. It argues that it was attempting to timely comply with that order when it discovered the overlap in question and, thus, its failure to comply was not the result of willful disregard or disrespect, but rather impossibility. Upon review, however, we find no abuse.

█ We begin with a statement of the law regarding contempt:

A trial court has inherent power to punish individuals for contempt, and nearly unfettered discretion in issuing contempt citations. We will reverse a finding of contempt only if the trial court abused its discretion in imposing the sentence. Abuse of discretion is defined as conduct by a court that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

Contempt is the willful disobedience of—or open disrespect for—the rules or orders of a court. Contempt may be either civil or criminal, depending upon the reason for the contempt citation. Civil contempt, the focus of this appeal, is the failure to do something under order of court, generally for the benefit of a party litigant. Thus, courts have inherent power to impose a sanction for a civil contempt to enforce compliance with their lawful orders.

*Crowder v. Rearden*, 296 S.W.3d 445, 450 (Ky.App.2009) (internal citations and quotations omitted).

As in *Crowder*, the circuit court's exercise of its civil contempt power is at issue in this case. The purpose of a court's exercising its civil contempt powers is to force compliance with its orders or to compensate for losses or damages caused by noncompliance,[7] and the circuit court sought to compel KERS to comply with its September 19, 2006 order and to compensate Foster for litigating this matter. Furthermore, it cannot be contested that KERS willfully failed to comply with the circuit court's September 19, 2006 order when it refused to recognize Foster's right to purchase the full twenty-three months of service credit associated with her employment at UK, even after it had exhausted all appeals from that order.

 KERS correctly states that the inability of the party to obey an order of contempt is ordinarily sufficient to purge it of the contempt charged. "Whether civil or criminal, a party cannot be punished for contempt for her failure to perform an act which is impossible." *Crowder*, 296 S.W.3d at 450 (citing *Blakeman v. Schneider*, 864 S.W.2d 903, 906 (Ky.1993)). However, Kentucky only recognizes impossibility as a defense to contempt where the

party claiming it can prove that he is not at fault for his inability to comply. *See Campbell County v. Com., Kentucky Corrections Cabinet*, 762 S.W.2d 6, 10 (Ky. 1988); *see also Tucker v. Commonwealth*, 299 Ky. 820, 187 S.W.2d 291, 294–5 (1945). This, KERS cannot do. As discussed at length above, it was entirely the responsibility of KERS to bring the issue of Foster's overlapping employment forward during these proceedings; KERS is at fault for having failed to do so, and now the law of the case mandates that KERS recognize Foster's right to twenty-three months of service credit for her employment at UK. For these reasons, KERS cannot claim impossibility, and the circuit court had the discretion to hold KERS in contempt. We find no error.

### 4. ATTORNEY'S FEES

 We review a court's award of attorney's fees under an abuse of discretion standard. *Giacalone v. Giacalone*, 876 S.W.2d 616, 621 (Ky.App.1994). KERS does not contest the specific amount of the attorney's fees the circuit court awarded ($18,885); nor does it contest how this amount was calculated. Rather, KERS argues that the circuit court abused its discretion by ordering KERS to pay any amount of attorney's fees because the expenditure of government resources is solely within the control of the Kentucky legislature and, absent statutory or contractual authority, the courts are without authority to ever impose costs or attorney fees against the Commonwealth. We disagree.

On the same basis that KERS now advocates, in *Cabinet For Health and Family Services v. G.W.F.*, 229 S.W.3d 596 (Ky. App.2007), we reversed an order that required the Cabinet, another administrative agency, to pay for opiate hair follicle drug

---

**7.** *Smith v. Loyall*, 702 S.W.2d 838, 839 (Ky. App.1986).

screen testing for parents of a child adjudged to be neglected. In doing so, we recited constitutional and statutory provisions that are equally relevant and pertinent to our analysis regarding the attorney's fees at issue here:

Kentucky Constitution § 27 states:

The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Kentucky Constitution § 28 states:

No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Kentucky Constitution § 230 states:

No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law[.]

KRS 41.110 provides in part that:

No public money shall be withdrawn from the Treasury for any purpose other than that for which its withdrawal is proposed, nor unless it has been appropriated by the General Assembly or is a part of a revolving fund, and has been allotted as provided in KRS 48.010 to 48.800, and then only on the warrant of the Finance and Administration Cabinet.

KRS 41.130(2) provides that:

No warrant shall be issued unless the money to pay it has been appropriated by law. The Finance and Administration Cabinet may require any claimant to state on the face of his claim the law under which it is payable.

KRS 453.010 provides that:

No judgment for costs shall be rendered against the Commonwealth in any action prosecuted by or against the Commonwealth in its own right, unless specifically provided by statute; provided, however, that in any civil action filed in any court of competent jurisdiction by or against the Commonwealth of Kentucky, the costs may be paid by the Commonwealth when such costs are approved and allowed by the judge of the court in which the case was filed. Costs shall not exceed the fees allowed for similar services in other civil actions.

And finally, Kentucky Rules of Civil Procedure (CR) 54.04(1) provides that:

Costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the Commonwealth, its officers and agencies shall be imposed only to the extent permitted by law.

*Id.* at 597–98.

The purpose of Section 230 of the Kentucky Constitution, the statutes, and CR 54.04 is "to prevent the expenditure of the State's money without the consent of the Legislature." *Ferguson v. Oates*, 314 S.W.2d 518, 521 (Ky.1958) (citation and internal quotations omitted). It is a purpose consistent with the governmental separation of powers and reinforces the proper role of the judiciary. "The judiciary's reason for existence is to adjudicate." *Bradshaw v. Ball*, 487 S.W.2d 294, 299 (Ky.1972).

However, *G.W.F.* also recognizes that this Court has affirmed trial court orders which directed an administrative agency to pay costs, irrespective of the above rules and statutes, where the order mandating the payment of those costs fell within the court's "inherent powers to do that which is reasonably necessary for the administration of justice." *G.W.F.*, 229 S.W.3d at 598

(citing *G.G.L. v. Cabinet For Human Resources,* 686 S.W.2d 826, 829 (Ky.App. 1985)). We explained in *G.W.F.* that

> [t]he control over this inherent judicial power ... is exclusively within the constitutional realm of the courts. As such, it is not within the purview of the legislature to grant or deny the power nor is it within the purview of the legislature to shape or fashion circumstances under which this inherently judicial power may or may not be granted or denied.

*Id.* (citation omitted.)

 The general rule is that in the absence of statutory or contractual authority, a trial court abuses its discretion if it makes an award of attorney's fees.[8] And, if the case at bar raised the issue of attorney's fees outside the context of the court's inherent authority to administer justice, KERS would be correct in stating that the circuit court abused its discretion by ordering it to pay Foster's attorney's fees.

 But, this case does involve the court's inherent authority to administer justice because the court's power of contempt is the very embodiment of that authority. *See Murphy v. Commonwealth,* 50 S.W.3d 173, 186 (Ky.2001) ("If the courts are to have the power to control participants in the judicial process and effectively administer justice, the power of contempt must be more than a hollow threat.") And, the scope of a court's contempt power is broad, even extending to public officials, as well as all branches of government and its agencies. *Louisville Metro Dept. of Corrections v. King,* 258 S.W.3d 419, 421 (Ky.App.2007); *see also Commonwealth, Department of Natural Resources and Environmental Protection v. Williams,* 536 S.W.2d 474, 476 (Ky. 1976). Additionally, contempt is an equitable remedy. *Glanton v. Renner,* 285 Ky.

808, 149 S.W.2d 748, 750 (1941). And, "[i]n equity the award of costs and [attorney] fees is largely within the discretion of the court, depending on the facts and circumstances of each particular case." *Dorman v. Baumlisberger,* 271 Ky. 806, 113 S.W.2d 432, 433 (1938); *see also Batson v. Clark,* 980 S.W.2d 566, 577 (Ky.App.1998); *Kentucky State Bank v. AG Services, Inc.,* 663 S.W.2d 754, 755 (Ky.App.1984); *see also Lake Village Water Ass'n, Inc. v. Sorrell,* 815 S.W.2d 418, 421 (Ky.App.1991) (recognizing the court's inherent power to shift fees "regardless of the existence of statutory authority or remedial rules").

It was not error for the circuit court to order KERS to pay Foster's attorney's fees. In the context of contempt proceedings the circuit court had both the discretion and the inherent legal authority to impose attorneys' fees against KERS, irrespective of KERS' status as a government agency.

## III. CONCLUSION

For the reasons herein stated, we affirm the circuit court's decisions to deny KERS relief under CR 60.02, hold KERS in contempt, and impose upon KERS Foster's attorney's fees. However, we vacate the trial court's decisions directing KERS to restore one month of sick leave service credit to Foster's account and enjoining KERS from further adjusting or auditing Foster's account outside the context of Foster's twenty-three months of UK employment; if Foster wishes to litigate those matters, she must do so in a separate administrative proceeding, not here.

ALL CONCUR.

---

8. *See also Kentucky State Bank v. AG Services,* *Inc.,* 663 S.W.2d 754, 755 (Ky.App.1984).