RENDERED: FEBRUARY 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1295-MR

KEITH FARROW                                                    APPELLANT

v.
APPEAL FROM CAMPBELL CIRCUIT COURT
HONORABLE RICHARD A. WOESTE, JUDGE
ACTION NO. 20-CI-00602

MARY FARROW                                                     APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: COMBS, GOODWINE, AND LAMBERT, JUDGES.

COMBS, JUDGE: Keith Farrow appeals the judgment of the Campbell Family

Court dissolving the parties' marriage. In order to avoid confusion in family court

matters, this Court often refers to parties by their first names. In its final decree,

the family court ordered that Keith Farrow would "henceforth be known as:

'Ariana Raelyn Farrow.'" However, in the notice of appeal, brief, and reply brief

to this Court, counsel refers to Appellant consistently as "Keith." No objection

having been raised, we shall also refer to the Appellant as "Keith" throughout our Opinion.

Keith argues that the family court erred in its assignment of the parties' debt; in its award of maintenance to the Appellee, Mary Farrow; and in its contempt decisions. Keith also argues that the family court erred by failing to take into account marital income allegedly concealed by Mary. After our review, we reverse, in part, and remand this matter for further proceedings while affirming the remainder of the judgment.

Keith and Mary married in 2012, in Kenton County, and one minor child was born of the marriage. In August 2020, Mary petitioned for dissolution of the marriage. A rather detailed recounting of the subsequent proceedings is necessary.

In October 2020, a temporary agreed order was entered. By its terms, the parties were to share joint custody of the child; Keith would enjoy exclusive use of the marital home and parenting time on the weekends. The parties agreed that they would maintain a joint bank account into which Keith would deposit earnings and Mary would deposit unemployment benefits. The "mortgage on the marital residence, [Mary's] rent, utilities, car payment, car insurance, cell phone, gas and electric for both parties, water and sanitation for both parties, internet and a second mortgage with Fifth Third Bank" were to be paid from this account. The

parties agreed that they would incur no more credit card debt while the matter was pending.

Two weeks later, Mary filed a motion for child support, maintenance, and a *status quo* order. She alleged that Keith had failed to deposit earnings into the account. She sought an order of contempt, explaining that Keith had also cut off her cell phone service and had taken the marital residence off the market. Mary requested attorney fees in the amount of $1,000.00. A few days later, Mary filed another motion. She sought immediate relief by asking that Keith "bring all [her] living expenses current and to pay her an additional sum of $1,000.00 for attorney's fees." In her affidavit, Mary stated that Keith's annual salary with United Parcel Service totaled $60,000.00 and that her unemployment benefits totaled $110.00 per week. She indicated that Keith "deposits his paycheck into the joint account and then immediately moves the funds electronically into his personal account." She also indicated that the credit cards had been "maxed out" and that she had already borrowed thousands of dollars from her family for living expenses. Her projected monthly expenses exceeded $4,700.00.

In response, Keith filed a motion for additional parenting time and also requested an order of contempt. Keith alleged that Mary had failed to comply with the shared parenting schedule and that she had failed to deposit her

unemployment benefits into the shared bank account. Keith also sought attorney's fees of $1,000.00.

Following a hearing, an order was entered on November 10, 2020. Anticipating the parties' scheduled mediation and in lieu of the failed shared bank account arrangement, the court ordered Keith to pay Mary $346.42 per week as child support and temporary maintenance. The parties attended mediation on December 1, 2020, but they were unable to resolve their differences. Thereafter, Keith unilaterally suspended the payment of child support and temporary maintenance ordered by the family court.

On January 15, 2021, Mary renewed her motion for contempt and attorney's fees. She sought payment of $1,369.00 in child support and maintenance arrearages and an additional $1,500.00 for attorney's fees. She also requested that Keith be required to advance her $2,500.00 for attorney's fees. A hearing was scheduled for March 19, 2021.

On March 17, 2021, Mary filed wage information and a child support worksheet. According to her computations, child support was to be set at $742.00 per month. Her updated monthly expenses were reduced to $4,361.90 per month.

In response, Keith indicated that Mary had been paid everything she was owed and requested that the ordered weekly payment of $346.42 be reduced. The hearing was conducted as scheduled on March 19, 2021. An agreed order

entered on this date provided that Keith was to pay to Mary $32,952.23 in exchange for her interest in the marital home.

A child support order was entered on April 7, 2021, providing for monthly support of $619.30 (per the child support guidelines) retroactive to October 28, 2020. The court calculated a five-month arrearage of $3,096.50. In addition, the court reduced Mary's temporary maintenance to $300.00 per month. The court ordered that the "previously ordered weekly payment of $346.42 to [Mary] is Terminated as of March 31, 2021[.]" Mary's request for attorney fees was held in abeyance -- as was Keith's request that Mary be held in contempt for her failure to accommodate Keith's parenting time.

On May 4, 2021, Mary filed yet another motion for relief. Mary indicated that Keith failed to pay her the ordered maintenance and that consequently she had been forced to invade the lump sum payment made to her in exchange for her interest in the marital home. On May 21, Keith filed a motion to modify the court's order of April 7. On May 26, 2021, the Campbell County Child Support Office filed a motion to intervene and requested that the ordered child support payments be made through its centralized collection division. A resolution of these issues does not appear of record. A trial order was entered, and trial was set for August 30, 2021. By agreement of the parties, it was rescheduled for December 3, 2021, and rescheduled again for March 7, 2022.

Following its final hearing, the family court found that Mary had secured employment where she earned $17.00 per hour. It found that Keith earned $43,646.55 in 2021; however, Keith acknowledged that the earnings would increase significantly in 2022. The family court found from a record of past earnings that Keith could be expected to earn $75,000.00 per year.

Based upon Keith's arguments, the court decided that it had erred by determining in its order of April 7 that there was a child support arrearage of $3,096.50. Because Keith had been ordered to pay $346.42 per week from October 28, 2020, through March 31, 2021, "in lieu of child support and maintenance," the court concluded that Keith could not have been in arrears retrospectively with respect to the child support computed under the child support guidelines. The court determined that Keith owed Mary $346.42 for each of the twenty weeks between November 10, 2020, and March 31, 2021, totaling $7,101.61; child support in the amount of $619.30 for each of the 11.25 months between April 1, 2021, and March 7, 2022, totaling $6,812.30; and maintenance in the amount of $300.00 for each of the 11.25 months between April 1, 2021, and March 7, 2022, totaling $3,375.00. It ordered that Keith be given credit for amounts paid toward the total child support and maintenance obligation owed from October 28, 2020, through March 7, 2022. While the total child support and maintenance obligation from October 28, 2020, through March 7, 2022, totaled

$17,288.91, it determined that the "parties need to do an audit of the amounts [Keith] paid in order to assess an amount of arrears, if any." Child support remained at $633 per month.

With respect to the parties' debts, the family court found that three of Mary's credit card debts (Fifth Third Bank; Sam's Club; and Kohl's) were nonmarital and assigned those to her. It found that the parties had agreed that the PNC debt was marital and assigned it in equal parts to Mary and Keith. Keith's retirement accounts were also divided equally between them.

With respect to an award of maintenance, the court found that Keith is "capable of earning $75,000 per year pursuant to his past earnings" but that Mary can not meet her reasonable financial needs on her own. It awarded her maintenance of $300.00 per month for three years. It concluded that the duration of the award was necessary and sufficient "based on the economic circumstances of the parties."

With respect to the contempt allegations, the family court found that Keith "has not paid consistently as ordered and violated the parties' Agreed Order from October 15, 2020, by shutting off [Mary's] phone causing her to incur additional cost." It concluded that Keith willfully violated the court's order and ordered Keith to pay $3,000.00 toward Mary's attorney fees. It found that Keith failed to show that Mary's conduct was contemptuous. This appeal followed.

On appeal, Keith argues that the family court erred by failing to divide a marital debt -- the parties' outstanding Fifth Third Bank credit card balance. In response, and without further explanation, Mary submits that the Fifth Third debt "has been resolved." On that basis, she contends that the issue is moot.

Our review of the record indicates that there were two credit card accounts with Fifth Third Bank. One was a joint account, and one was Mary's separate account. While Keith discussed these separate accounts in proposed findings of fact and conclusions of law tendered to the family court, we agree that the court failed to address the division of this marital debt. Consequently, we must remand the matter for the family court's consideration.

Next, Keith argues that the family court erred in its award of maintenance. A family court may grant maintenance where it finds that the spouse seeking maintenance lacks sufficient property (including apportioned marital property) to provide for reasonable needs and is unable to meet support needs through appropriate employment. KRS[1] 403.200. An award of maintenance must be in such an amount and for such a period of time as the court deems just after considering all relevant factors. *Id.* In determining a just amount of maintenance and its duration, the family court considers the following factors:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to

---

[1] Kentucky Revised Statutes.

him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2). An award of maintenance is made by the court exercising its sound discretion. *Weldon v. Weldon*, 957 S.W.2d 283 (Ky. App. 1997).

In an effort to preserve the *status quo* between the spouses while the dissolution action is pending, a family court may award *temporary maintenance*. KRS 403.160; *Horvath v. Horvath*, 250 S.W.3d 316, 318 (Ky. 2008). By its very nature, such an order is interlocutory in nature and is generally not subject to appeal. *See Cannon v. Cannon*, 434 S.W.2d 48 (Ky. 1968); and *Lebus v. Lebus*, 382 S.W.2d 873 (Ky. 1964). Consequently, we decline to address Keith's challenge to the family court's award of temporary maintenance aimed at easing the abrupt financial disruption caused by the parties' separation. The family

-9-

court's orders changed appropriately as dictated by the parties' dynamic financial circumstances. Therefore, we decline to second-guess its exercise of discretion under those circumstances. However, we do note the wholly unfounded nature of Keith's contention that the award of temporary maintenance and child support terminated, *sua sponte*, when the parties appeared for mediation. It simply did not, and Ketih had no legitimate basis to cease making payments unilaterally based on the flawed premise that mediation terminated that obligation.

With respect to the family court's later award of rehabilitative maintenance, Keith first contends that it was awarded on the basis of a clearly erroneous finding. We disagree.

In its judgment, the court observed that the parties "previously agreed to an amount for maintenance." However, Keith argues that there is no evidence to suggest that the parties ever agreed that Mary was entitled to maintenance.

We are not persuaded by Keith's argument that the family court's decision to award maintenance was based solely upon this specific finding of fact. Nor do we agree that the finding is erroneous. At the outset of the proceedings, the parties entered into an agreement pursuant to which Mary's living expenses were to be paid -- in substantial part -- from funds deposited by Keith. This fact is undisputed.

In the alternative, Keith argues that the award of rehabilitative maintenance must be vacated because the family court failed to make necessary findings with respect to the threshold requirements outlined in KRS 403.200. Mary acknowledges candidly that "it may be appropriate to remand to the trial court to get more specific findings of fact that comply with the statute." Based upon Mary's acknowledgement as well as our earlier determination that the family court failed to address one of the Fifth Third accounts, we remand this matter as well for further consideration.

CR[2] 52.01 provides that where the court tries an action without a jury, it must find the facts specifically and state separately its conclusions of law. In this case, the family court found that Mary is "employed with Perfection Group in Facilities Maintenance and makes $17 per hour" and "require[s] some assistance to meet her reasonable needs." It then concluded that maintenance for a three-year period is sufficient "based on the economic circumstances of the parties." These findings of fact are insufficient to permit our accurate evaluation of the family court's award of maintenance. Remand is necessary for the entry of findings that will facilitate meaningful appellate review.

We also conclude that remand is required so that the family court may have an opportunity to consider the impact of an additional and substantial part of

---

[2] Kentucky Rules of Civil Procedure.

the marital estate: Mary's lump sum unemployment benefits. Keith argues that the family court erred by failing to address the contention that a substantial amount of marital income alleged to have been concealed by Mary should be divided between the parties or accounted for with respect to her request for rehabilitative maintenance. Keith contends that Mary deposited unemployment benefits totaling $11,364.00 into her personal checking account just weeks before she filed her petition for dissolution of the marriage. While Mary admits that she received the unemployment benefits, she denies that she hid the money in her individual bank account. Mary explains that she used the marital funds to pay her rent following the couple's separation.

Our review of the record indicates that the family court determined in interlocutory orders that disputed sums of money deposited into Mary's separate bank account had been provided by family members for the sole purpose of convincing Mary's landlord that she had sufficient resources to pay rent; thereafter, those sums of money had been returned to family members. However, it does not appear that the family court ever considered Mary's receipt of an additional $11,000.00 when it disposed of the marital estate or when it awarded maintenance. It is undisputed that Mary removed more than $11,000.00 from the marital estate; it was neither apportioned to her alone nor was it equitably distributed between the parties. Consequently, on remand the family court must account for these sums

and re-evaluate the amount and duration of maintenance awarded in light of its disposition of this marital asset.

Finally, we consider Keith's argument that the family court erred in its contempt orders. Contempt of court is defined as disrespect or willful disobedience of the rules or orders of a court. *Commonwealth v. Burge*, 947 S.W.2d 805 (Ky. 1996). "A trial court has inherent power to punish individuals for contempt." *Crowder v. Rearden*, 296 S.W.3d 445, 450 (Ky. App. 2009) (citing *Newsome v. Commonwealth*, 35 S.W.3d 836 (Ky. App. 2001)). It may exercise its civil contempt powers to force compliance with its orders, to compensate for losses or damages caused by the noncompliance, or both. *Kentucky Retirement Systems v. Foster*, 338 S.W.3d 788 (Ky. App. 2010). An award of attorney fees is a proper sanction for contempt. *Id.* at 803. And the court enjoys broad discretion. Its power to impose sanctions for contempt has been described as "nearly unfettered." *Smith v. City of Loyall*, 702 S.W.2d 838 (Ky. App. 1986). Consequently, our review is limited to a determination of whether the court abused its considerable discretion. *Kentucky River Community Care, Inc. v. Stallard*, 294 S.W.3d 29 (Ky. App. 2008).

The family court found that Keith was in contempt for violation of its orders to pay maintenance and child support. It imposed attorney's fees in the amount of $3,000.00 both as a sanction and as compensation to Mary for expenses

she incurred in litigating the issue. It did not find Mary in contempt for her alleged failure to accommodate Keith's parenting time.

The family court did not abuse its discretion by finding that Keith willfully undermined its authority to administer justice and thus in sanctioning the contemptuous conduct. The evidence tended to show that Keith was aware of the court-ordered obligations concerning child support and maintenance. Mary met her burden of showing -- by clear and convincing evidence -- that Keith violated the court's directives. The court was not persuaded that Keith met his burden to show -- clearly and convincingly -- an inability to comply with the orders; any justification in not complying; or conscientious efforts to comply. The court's determination is wholly supported by the facts and the law.

In contrast, Keith was unable to persuade the family court by clear and convincing evidence that Mary willfully violated the court's order concerning their shared parenting time. Consequently, she had no burden to present countervailing evidence. The family court did not abuse its "nearly unfettered" discretion to reject Keith's assertions.

The judgment of the Campbell Family Court is affirmed in part, reversed in part, and remanded for further proceedings.

To summarize, we reverse the judgment and remand this case to the Campbell Family Court with respect to: (1) the Fifth Third account that was not

addressed; (2) the insufficiency of the findings to support the award of rehabilitative maintenance; and (3) an accurate accounting and disposition of the $11,000 in Mary's unemployment benefits. We affirm with respect to all other issues.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Ryan J. Reed
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE:

Holly A. Daugherty
Erlanger, Kentucky